

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0786-08

**MURRAY HAMMER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### WILSON COUNTY

**COCHRAN, J., delivered the opinion of the unanimous Court.**

### OPINION

Appellant claims that the court of appeals erred when it held that the trial court did not

abuse its discretion in excluding evidence that the complainant in this prosecution for

indecency with a child had previously made a false accusation of "rape."[1]  We agree with

---

[1] *Hammer v. State*, 256 S.W.3d 391 (Tex. App.—San Antonio 2008).  Appellant's sole
ground for review is as follows:
> The court of appeals incorrectly determined an important issue of state and federal
> law by deciding that the trial court did not abuse its discretion by excluding
> impeachment evidence of complainant's previous false allegations of sexual
> assault and such exclusion violated petitioner's rights under the Confrontation

appellant that the trial judge abused her discretion in excluding some of the evidence appellant offered to demonstrate the complainant's motive to falsely accuse him of molestation. We therefore reverse the judgment and remand this case for further proceedings in the court of appeals.

I.

The evidence at trial showed that fifteen-year-old P.H. moved to Floresville to live with her grandmother and her father–appellant–after CPS removed her from her mother's home in June 2005. P.H. was a troubled teen-ager who had long been under CPS supervision because her mother had drug problems. By August of 2005, she was taking the mood-stabilizing drugs Prozac and Seroquel. The Seroquel made her drowsy, and she "slept hard."

P.H. testified that, in late August, she and appellant visited a family friend, Shonna Makuta. According to P.H., all three of them drank vodka. P.H. then took her Seroquel and fell asleep on the living-room couch with her clothes on. She said that she woke up sometime during the night to find that her pants and underwear were gone. Appellant was standing over her. P.H. got up, put her pants back on, and then went to sleep in Shonna's bed, which was in the living room. Shonna had "passed out" and was sleeping in an upright chair next to the couch. P.H. said that she woke up a second time to find appellant in the bed,

Clause of the United States Constitution. The court of appeals' opinion is in direct contradiction with the First Court of Appeals in its decision in *Thomas v. State*, 669 S.W.2d 420 (Tex. App.—Houston [1ˢᵗ Dist.] 1984, pet. ref'd), in that the fourth court finds the allegations which complainant fabricated are dissimilar to the offenses [with] which petitioner is charged.

"kind of spooning me and he had his hands on my crotch."  She got up and moved back to the couch.  The next morning, P.H. "told him that I know what happened and he told me that he didn't remember and that he was drunk and he told me he was really sorry."  She didn't tell anyone about the molestation because she knew that appellant had been drinking.

P.H. said that, about two weeks later, she was sleeping in her grandmother's bed with her clothes on.  She woke up to find appellant behind her with his hands down the front of her pants, rubbing her vagina.  When he saw that P.H. was awake, he jumped up and left the room.  He was fully clothed.  She fell back asleep.  Later that night, the same thing happened again.  She got up and locked the door.  The next morning, appellant asked P.H. if she had slept okay.  She said that she woke up several times and that she knew what he had done.  Appellant said that he thought that was what she wanted, and then he stated, "If you ever change your mind, baby girl, let me know."  About a week later, P.H. told a friend about these incidents, and that friend told school officials, who called CPS.

On cross-examination, P.H. stated that when she lived with her mother, she "pretty much" did whatever she wanted to.

> It was a lot different when I moved with my dad because it was more structured.  I had a curfew.  I couldn't talk on the phone very long, I had to get good grades in school.  I had to go to doctor's appointments and stuff like that.

She got angry at appellant because of these new rules.  They had a lot of fights about her staying out late.  P.H. told him that she didn't like these rules, but denied telling him that if he didn't leave her alone, she was going to send him back to prison.  She also denied telling

anyone that these sexual events didn't happen.

After P.H.'s testimony, defense counsel requested a hearing outside the jury's presence to revisit the trial judge's pretrial ruling on the State's motion in limine that excluded all evidence of P.H.'s previous sexual conduct. Appellant explained that he wanted to introduce P.H.'s medical records from a sexual-assault examination on July 6, 2005 (one month after she had come to live with appellant), in which she told the hospital nurse that Ignacio Talamendez "sexually assaulted" her. She told the nurse that "at first it was kind of a consensual thing but I told him to stop and he kept going." According to the medical records, appellant had taken an unwilling P.H. to the hospital for a sexual-assault examination after she had run away for two days. P.H. told the nurse, "My dad wants to prove that I had sexual intercourse with one of the guys that I ran away with." The records state that she was angry with her father. Those records also show that P.H. told the nurse of prior sexual abuse–that her "uncle would put his hands on genital area, at age 13 yrs." This is the very same conduct that P.H. accused appellant of committing.

Defense counsel stated that he had another witness (Shonna Makuta) who would say that P.H. told her, "Well, I really was with someone else that I didn't want my dad to know about which is why I blamed Ignacio."[2] Appellant argued, as he had at the pretrial hearing, that this evidence was (1) relevant to P.H.'s truthfulness; (2) required under the

_____

[2] Shortly after the sexual-assault exam in July, P.H. was admitted to the state hospital after making suicidal threats. The Prozac and Seroquel were prescribed when she was released back into appellant's care.

Confrontation Clause; and (3) admissible under Rule 412[3] to show P.H.'s motive to accuse her father because her father was trying to stop P.H.'s "wild" conduct.  The trial judge stated that "the prejudicial effect outweighs the probative value" and refused to allow any impeachment with the medical records.

Appellant then made a bill of exceptions by cross-examining P.H. outside the presence of the jury.  At first she denied telling the hospital nurse that the prior sexual activity was nonconsensual, but, when shown the medical records, she admitted that she had said that.  She denied telling Shonna that she had had sex with Anthony, not Ignacio, the night that she ran away.  The trial judge stated that her ruling was the same, barring cross-examination of P.H. and excluding the medical records.

After the jury returned, a CPS caseworker and a CPS investigator testified to statements that both P.H. and appellant had made to them.  P.H. told the CPS investigator that she has never gotten along with her father because he screamed at her when disciplining her.  She also stated that appellant threatened her and said that if she ever told anyone about the molestation she would go to foster care.

Shonna Makuta testified for the defense that, to her knowledge, P.H. never drank alcohol at her house.  She stated that, at first, she wanted to believe P.H.'s story, but things that P.H. said made her start to doubt.  Appellant's mother also testified and said that P.H.'s behavior while living at her house was "getting very bad."  Before the alleged molestation,

---

[3]T EX. R. EVID. 412 (Evidence of Previous Sexual Conduct in Criminal Cases).

P.H. told her grandmother that she wanted to be emancipated from both her mother and father so that she could be on her own.

At the end of the first day of testimony, the defense recalled several witnesses to make a second bill of exceptions outside the presence of the jury.  First, appellant reoffered the medical records, but the trial judge said that she had previously ruled that the prejudicial effect outweighed their probative value and therefore she was receiving them only as a bill of exceptions.  Next, Shonna testified that P.H. told her that she was dating a boy named Anthony and that her father was really strict about letting her see him.  P.H. told her dad that Ignacio had raped her, but she had really been with Anthony.  Shonna also stated that P.H. had made other allegations of people molesting her, including her uncle on her mother's side, but she did not know whether those allegations were false.  Appellant's mother testified that P.H. told her that "every one of her mother's boyfriends" had molested her.  She did not know whether those allegations were true or not.  Appellant's mother told of an incident in which P.H. and her cousin ran away and called on a cell phone to say that they were being held by five men and that these men had knives to their throats and were raping them.  Appellant's mother called the police who started to put out an "Amber Alert," but pulled it back when the two girls came home and said that they had just run away.  Margarita Higdon, appellant's girlfriend and the mother of his teen-aged son, testified that, when P.H. moved into her home after appellant was accused of molestation, she had to have CPS remove P.H. because school officials called and told her that she had been caught down at "the Ag. barn"

lying on the ground with a boy.  P.H. had also told Ms. Higdon that her uncle had molested her when she was young.

After hearing these witnesses, the trial judge said, "Any further proffer on your bill of exceptions?"  Counsel replied: "Nothing more except from the defendant himself–he can testify now or tomorrow when the jury is deliberating."  The trial judge responded, "Well, it's a little hard for you to make a bill of exception until you know what I'm going to let in and keep out. . . . So I think we better wait until tomorrow."  Appellant did testify the next day, but his counsel did not make any bill of exception concerning his testimony.[4]

The jury found appellant guilty of both counts of indecency with a child, and the trial judge sentenced him to fifteen years' imprisonment.  On appeal, appellant asserted that the trial court erred in excluding impeachment evidence of the complaint's previous false allegations of sexual assault in violation of the Confrontation Clause.  The court of appeals concluded that the excluded testimony, including the medical records, (1) was a "general" attack upon P.H.'s credibility; (2) did not establish that the prior accusations were false; and (3) did not show that the prior accusations were similar to the ones in this case.[5]

---

[4] Neither the State, nor appellant, nor the court of appeals have suggested that appellant failed to preserve his claim concerning the excluded evidence.   It is possible to interpret the trial judge's statement that "it's hard for you to make a bill of exception until you know what I'm going to let in and keep out" as referring to all the witnesses' testimony that had been proffered on the bill of exceptions.  It is much more likely, however, that the trial judge was referring only to appellant's own testimony, which had not yet occurred.  Under these circumstances, especially as neither the State nor the court of appeals mentioned any possible ambiguity, we conclude that appellant's claims were properly preserved for review.

[5] *Hammer v. State*, 256 S.W.3d 391, 395-96 (Tex. App.—San Antonio 2008).

II.

## A.    General Constitutional and Evidentiary Considerations.

The Sixth Amendment right to confront witnesses includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying.[6]   This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination.[7]   Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under state evidentiary rules.[8]   Thus, most questions

---

[6] *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

[7] *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude" under the Confrontation Clause to impose restrictions on cross-examination based on such criteria as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant"); *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); *Castle v. State*, 748 S.W.2d 230, 233 (Tex. Crim. App. 1988) ("Generally, the scope of cross-examination is within the control of the trial court and in the exercise of its own discretion."); *Toler v. State*, 546 S.W.2d 290, 295 (Tex. Crim. App. 1977).

[8] *See United States v. Scheffer*, 523 U.S. 303, 316 (1998) (discussing several of the Court's prior holdings concerning the unconstitutional exclusion of defense evidence and stating that those cases did not "signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures."); *Potier v. State*, 68 S.W.3d 657, 660-62 (Tex. Crim. App. 2002) (discussing Supreme Court cases and stating that they "show that the exclusion of relevant, material, important evidence by the application of particular rules that are arbitrary or disproportionate to their purposes may offend the Constitution. They also show that courts are free to apply evidentiary rules that are not arbitrary and unjustified."). As we explained in *Potier*, there are two distinct scenarios in which rulings excluding a defendant's evidence might rise to the level of a constitutional violation: (1) a state evidentiary rule which categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence which is vital to his defense; and (2) a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence which "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." In the first category, the constitutional infirmity is in the arbitrary rule of evidence itself. In the second category, the evidentiary rule itself is appropriate, but the trial court erroneously applies it

concerning cross-examination may be resolved by looking to the Texas Rules of Evidence. In those rare situations in which the applicable rule of evidence conflicts with a federal constitutional right, Rule 101(c) requires that the Constitution of the United States controls over the evidentiary rule.[9]  Rule 101(c) also states, "Where possible, inconsistency is to be removed by reasonable construction" as well as by reasonable application of the rule.  Thus, compliance with the reasonable construction and application of a rule of evidence will, in most instances, avoid a constitutional question.

Trials involving sexual assault may raise particular evidentiary and constitutional concerns because the credibility of both the complainant and defendant is a central, often dispositive, issue.  Sexual assault cases are frequently "he said, she said" trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence.  Thus, the Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such "he said, she said" cases.[10]  And Texas law, as well as the federal

to exclude admissible evidence to such an extent that it effectively prevents the defendant from presenting his defensive theory. *Id.* at 663-65.

[9]T EX. R. EVID. 101(c) (Hierarchical Governance in Criminal Proceedings); *see Lopez*, 18 S.W.3d at 220 ("We have previously indicated that the Confrontation Clause will prevail if there is a conflict between it and the Rules of Evidence.").

[10] *See, e.g., Lopez*, 18 S.W.3d at 227 (Keller, J., concurring) (noting that, while credibility is no more important in sex offenses than other cases, it "is more likely to be the *only* factor in sex cases than it is in other types of cases" in which "one can expect corroborating evidence"; thus the Rule 403 balancing approach would most often render evidence of prior false

constitution, requires great latitude when the evidence deals with a witness's specific bias, motive, or interest to testify in a particular fashion.[11]

But, as the Supreme Court noted in *Davis v. Alaska*,[12] there is an important distinction between an attack on the general credibility of a witness and a more particular attack on credibility that reveals "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand."[13]   Thus, under *Davis*, "the exposure of a witness' motivation in testifying is a proper and important function of the

---

accusations admissible in such cases).

[11] *See, e.g., Richardson v. State*, 744 S.W.2d 65, 79 (Tex. Crim. App. 1987) (noting that both under Texas law and *Davis v. Alaska*, "the accused is given great latitude in showing any fact which would tend to establish ill feeling, bias, or motive for fabrication on the part of any witness testifying against the accused."), *vacated on other grounds*, 492 U.S. 914 (1989); *Gonzales v. State*, 929 S.W.2d 546, 549 (Tex. App.—Austin 1996, pet. ref'd) ("The rules of evidence grant a party greater latitude to prove a witness's bias than to prove a witness's untruthful character"; [current Rule 613] "places no limits on the sort of evidence that may be adduced to show a witness's bias or interest").

[12] *Davis v. Alaska*, 415 U.S. 308 (1973).

[13] *Davis*, 415 U.S. at 316.  In *Davis,* Richard Green, a "crucial" witness for the prosecution in its burglary case against Davis, was himself on juvenile probation for burglary. The defense wanted to impeach him with that probation status to show that he had a strong motive to shift the potential blame for the charged burglary from himself to the defendant.  The defense had specifically not offered this impeachment evidence as an attack upon the witness's general credibility; instead, counsel explained that his theory was that

> Green acted out of fear or concern of possible jeopardy to his probation.  Not only might Green have made a hasty and faulty identification of [Davis] to shift suspicion away from himself as one who robbed the Polar Bar, but Green might have been subject to undue pressure from the police and made his identification under fear of possible probation revocation.  Green's record would be revealed only as necessary to probe Green for bias and prejudice and not generally to call Green's good character into question.

*Id.* at 311.

constitutionally protected right of cross-examination."[14]  However, as Justice Stewart noted

in concurrence, the Court neither held nor suggested that the Constitution confers a right to

impeach the *general* credibility of a witness through otherwise prohibited modes of cross-

examination.[15]   Thus, the *Davis* Court did not hold that a defendant has an absolute

constitutional right to impeach the general credibility of a witness in any fashion that he

chooses.  But the constitution is offended if the state evidentiary rule would prohibit him

from cross-examining a witness concerning possible motives, bias, and prejudice to such an

extent that he could not present a vital defensive theory.[16]

Under Rule 404(a)(3) of the Texas Rules of Evidence, a defendant may always offer

evidence of a pertinent character trait–such as truthfulness–of any witness.  But, under Rule

608[17] the witness's general character for truthfulness may be shown only through reputation

or opinion testimony.  A witness's general character for truthfulness or credibility may not

be attacked by cross-examining him (or offering extrinsic evidence) concerning specific prior

instances of untruthfulness.  For example, the defense may not ask the witness: Didn't you

cheat on your income tax last year?  Didn't you lie on Tuesday about having an affair with

---

[14] *Id.* at 316.

[15] *Id.* at 321 (Stewart, J., concurring).

[16] *Potier v. State*, 68 S.W.3d 657, 663-65 (Tex. Crim. App. 2002); *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002).

[17] TEX. R. EVID. 608(a)(1) ("The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness").

your boss?  Didn't you steal five dollars from the church collection plate last week and then lie to the priest about it? While all of those questions attack the witness's general character for truthfulness, that mode of impeachment is specifically barred by Rule 608(b).[18] Our state evidentiary rules frown on unnecessary character assassination.

However, the rules of evidence do permit a witness to be cross-examined on specific instances of conduct when they are used to establish his specific bias, self-interest, or motive for testifying.  Under Rule 613(b), the opponent must first cross-examine the witness with the circumstances surrounding the bias, interest, or motive, and, if the witness denies the circumstances or the motive, the opponent may introduce extrinsic evidence to prove the motive or bias.[19]  Furthermore, Rule 404(b) explicitly permits the defense, as well as the prosecution, to offer evidence of other acts of misconduct to establish a person's motive for

---

[18] TEX. R. EVID. 608(b) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.").

[19] TEX. R. EVID. 613(b).  The rule reads:
*Examining Witness Concerning Bias or Interest.*  In impeaching a witness by

proof of circumstances or statements showing bias or interest on the part of such witness, and before further cross-examination concerning, or extrinsic evidence of, such bias or interest may be allowed, the circumstances supporting such claim or the details of such statement, including the contents and where, when and to whom made, must be made known to the witness, and the witness must be given an opportunity to explain or to deny such circumstances or statement. If written, the writing need not be shown to the witness at that time, but on request the same shall be shown to opposing counsel. If the witness unequivocally admits such bias or interest, extrinsic evidence of same shall not be admitted. A party shall be permitted to present evidence rebutting any evidence impeaching one of said party's witnesses on grounds of bias or interest.

performing some act–such as making a false allegation against the defendant.

Thus, generally speaking, the Texas Rules of Evidence permit the defendant to cross-examine a witness for his purported bias, interest, and motive without undue limitation or arbitrary prohibition.  The next question, then, is whether those rules accommodate evidence of a witness's prior, purportedly false, accusations.

**B.      The Admission of Prior False Accusation Evidence in Sexual Assaultive Cases.**

The theory for admitting prior false accusations of rape in a sex-offense prosecution is frequently analogized to Aesop's story of "The Boy Who Cried Wolf."  A past false accusation makes it more likely that the witness lacks credibility and thus should not be believed concerning this accusation.  But in Aesop's fable, there really was a wolf, and it killed the sheep.[20]  The moral of that story was "Nobody believes a liar. . . even when he is telling the truth."  A criminal trial, however, is designed to find the truth about a specific incident, not to decide whether someone has lied in the past about the presence of wolves or about being raped.  Prior false allegations of rape do not tend to prove or disprove any of the elements of the charged sexual offense.[21]

---

[20] *See*  http://www.storyarts.org/library/aesops/stories/boy.html

[21] *State v. Boggs*, 588 N.E.2d 813, 816-17 (Ohio 1992) ("The mere fact that an alleged rape victim made prior false allegations does not automatically mean that she is fabricating the present charge.  Likewise, prior false allegations of sexual assault do not tend to prove or disprove any of the elements of rape, nor do they relate to issues of consent.").

Therefore, Texas, unlike some jurisdictions,[22] has not created a *per se* exception to Rule 608(b)'s general prohibition against impeachment with specific instances of conduct to admit evidence of the complainant's prior false allegations of abuse or molestation.[23] The inferential chain of logic that is barred by Rule 608(b) is this:

> The witness lied to his employer [or did some specific act of dishonesty]
> That specific conduct proves dishonest character;
> Therefore,  the witness is generally dishonest and should not be believed
>     in this case.

Applied to prior false accusations, the barred evidentiary chain is this:

> Complainant made a prior false accusation;
> That specific conduct proves dishonest character;
> Therefore, the complainant is generally dishonest and should not be believed
>     in this case.

This is precisely the prohibited propensity chain of logic–"Once a thief, always a thief," "Once a liar, always a liar"–that underlies both Rules 404(b) and 608(b).[24] A sexual assault

---

[22] *See Lopez v. State*, 18 S.W.3d 220, 223 (Tex. Crim. App. 2000) (collecting out-of-state cases suggesting that the Confrontation Clause requires a special exception admitting evidence of the complainant's prior false accusations of abuse in sexual offenses).

[23] *Lopez,* 18 S.W.3d at 225 ("Because we find (1) our precedent does not favor creating a special exception to the Rules of Evidence for sex offenses, and (2) the rationale of the out-of-state cases creating a universal sexual offense exception is unpersuasive, we decline to create a *per se* exception to the Rule 608(b) for sexual offenses.").

[24] *See State v. Wyrick*, 62 S.W.3d 751, 772 (Tenn. Crim. App. 2001) (defendant's contention that victim's prior false accusation of rape is relevant to her credibility is the very type of propensity evidence that Rule 404(b) seeks to exclude); *see generally*, Harriett R. Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 MINN.L.REV. 763, 861 (1986) (explaining that some courts permit false-allegation evidence not "to impeach the complainant's general character for truthfulness, but instead . . . to show a propensity to charge rape falsely," thereby ignoring "the fact that admitting evidence under this theory violates the general rule forbidding evidence of character to prove conforming conduct").

complainant is not a volunteer for an exercise in character assassination.[25]  Several federal courts have held that exclusion of this evidence, offered to attack the victim's general credibility, does not violate the Confrontation Clause.[26]

If, however, the cross-examiner offers evidence of a prior false accusation of sexual activity for some purpose other than a propensity attack upon the witness's general character for truthfulness, it may well be admissible under our state evidentiary rules.

For example, in *Billodeau v. State*,[27] we held that the trial court should have admitted evidence that the child complainant in that aggravated sexual assault prosecution had  made threats to falsely accuse two neighbors of sexual molestation.  We held that such evidence supported the defensive theory that the complainant's motive in accusing the defendant of sexual molestation was "rage and anger" when he was thwarted.[28]  Evidence of threats to

---

[25] *See generally*, Denise R. Johnson, *Prior False Allegations of Rape: Falsus in Uno, Falsus in Omnibus,* 7 YALE J.L. & FEM. 243 (1995) (arguing that evidence of prior false allegations should be excluded unless probative of motive in the particular case).

[26] *Boggs v. Collins*, 226 F.3d 728, 739-40 (6th Cir. 2000) (declining to find a Confrontation Clause violation when trial court excluded evidence of prior false accusation of rape because it was offered to impeach the victim's general credibility, not to demonstrate her bias or motive to testify); *United States v. Bartlett*, 856 F.2d 1071, 1089 (8th Cir. 1988) (admission of evidence of an alleged prior false accusation of rape offered solely to attack the victim's general credibility is not required under *Davis v. Alaska*); *Hughes v. Raines*, 641 F.2d 790, 792-93 (9th Cir. 1981); *Adams v. Smith*, 280 F. Supp.2d 704, 714 (E.D. Mich. 2003).

[27] ___ S.W.3d ___, No. PD-0969-07, 2009 WL 322244 (Tex. Crim. App. Feb. 11, 2009).

[28] In *Billodeau*, the evidence showed that the defendant had given the child two remote-control cars.  The child's mother disapproved of the cars and told the defendant to take them back.  When the defendant took them from the child, he "went into a rage, threw the cars at [the defendant], hitting him in the back, and swore at him." ___ S.W.3d at ___, 2009 WL 322244, at *1.  The day after this tantrum, the child accused the defendant of sexually molesting him. *Id.*

accuse others of sexual molestation when he displayed "rage and anger" at being thwarted is some evidence of a common motive for accusing the defendant of sexual molestation. The chain of logic is as follows:

> The victim makes false accusations in certain circumstances and for certain reasons;
> Those circumstances and reasons are present in this case;
> Therefore, the victim made a false accusation in this case.[29]

One might even call this *modus operandi* evidence admissible under Rule 404(b). Evidence of other acts or wrongs may be admissible under Rule 404(b) to prove such matters as motive, intent, scheme, or any other relevant purpose except conduct in conformity with bad character. Even "the doctrine of chances" has been invoked as a possible basis for admitting evidence of a victim's prior false accusation of rape.[30] Similarly, evidence of a victim's prior

---

n.3. The defense theory was that the child falsely accused the defendant of sexual molestation because he was angry at him for taking away the cars. Evidence that, on other occasions (in this case they occurred after the primary offense), the child had, when enraged at someone for thwarting his desires, falsely accused (or threatened to falsely accuse) that person of sexually molesting him shows a common motive to accuse someone of molestation when he is angry at them. Rule 404(b) would allow this type of evidence against the defendant to prove his motive in committing the charged crime, and it is equally available to the defense to prove the victim's motive in acting as he did.

[29] *See Kittleson v. Dretke*, 426 F.3d 306, 322 (5th Cir. 2005) (victim's accusation that some other man had improperly touched her supported defensive theory that victim "had a motive to make up such an accusation in order to gain attention and sympathy, as she had received once before, and to show that once [victim's] accusation had been reported to the police, she was afraid to recant.").

[30] *See* Jules Epstein, *True Lies: The Constitutional and Evidentiary Bases for Admitting Prior False Accusation Evidence in Sexual Assault Prosecutions*, 24 QUINNIPIAC L.REV. 609, 643-44 (2006).

sexual activity may be admissible under Rule 412, the Texas Rape Shield Law,[31] when offered to establish the victim's motive or bias against the defendant.

In sum, several different state evidentiary rules permit the use of prior false accusations when offered to show the witness's bias or motive or for some other relevant, noncharacter purpose. The Confrontation Clause mandate of *Davis v. Alaska* is not inconsistent with Texas evidence law. Thus, compliance with a rule of evidence will, in most instances, avoid a constitutional question concerning the admissibility of such evidence. With that general framework, we turn to the present case.

## III.

At his trial, appellant offered evidence of P.H.'s prior sexual conduct and her prior allegations of "rape" for three reasons: (1) it was relevant to P.H.'s truthfulness, *i.e.*, her general credibility; (2) it was required to be admitted under the Confrontation Clause; and (3) it was admissible under Rule 412 to show P.H.'s motive to falsely accuse her father because he was too strict. We agree that some of this evidence was admissible to show P.H.'s possible motive in accusing her father of molestation.

First, we note that appellant over-emphasized his reliance upon the Confrontation Clause, rather than Rule 412 (or other evidentiary rules such as Rules 613 or 404(b)), in the court of appeals.[32] Thus, that court focused solely upon his Confrontation Clause argument

---

[31] TEX. R. EVID. 412(b)(2)(C).

[32] Appellant did argue that "the evidence proffered by Ms. Makuta in the offer of proof tended to add one more piece to the puzzle as to Defendant's argument that complainant was an

instead of first determining whether this evidence, though barred by Rule 608(b), was admissible under other evidentiary rules to prove P.H.'s motive.[33]   Only if the proffered evidence is barred by all state evidentiary rules must courts turn to the federal constitution.

In this case, appellant's defensive theory was that P.H. made up a tale of sexual molestation to get out from under the heavy hand of her father.  She said she never liked him because he disciplined her too much and yelled at her while doing so.  She was angry with him because he wouldn't let her do whatever she wanted to, as she could when she lived with her mother.  The jury was aware of P.H.'s motive to make a false accusation that would send appellant back to prison.  Appellant was allowed to question P.H. generally about her motive to falsely accuse him.

But what the jury did not know–because the trial judge excluded it–is that P.H. was particularly angry with appellant when he took her to the hospital for a sexual assault examination after she had run away from home and stayed out overnight.  She told the nurse,

out of control child that did not appreciate her father enforcing rules in that she testified P.H. did not have sex with Mr. Talamendez at all but rather lied about the rape to keep her father from discovering her relationship with Anthony.  This was crucial to Defendant's case, and a major theme of his opening argument.  Thus the evidence was not only probative as to P.H.'s credibility but as to her motivation as well.  It is important to note that Rule 608 only prohibits the admission of specific instances of conduct to attack the credibility of the witness."  Appellant's Brief in the Court of Appeals at 6.

[33] The court of appeals, in looking at the entire collection of proffered evidence, concluded that it amounted to a "general" attack on P.H.'s credibility.  *Hammer*, 256 S.W.3d at 395.  The court was correct that, in its entirety, the excluded evidence does attack P.H. as being generally untruthful about sexual matters.  It is a mish-mash of "The Boy Who Cried Wolf" evidence.  But the trial court and the court of appeals failed to examine the individual offers of evidence to see whether some of that evidence was not merely a general attack upon credibility but a more specific attack upon P.H.'s motive to falsely accuse appellant of molestation.

"My dad wants to prove that I had sexual intercourse with one of the guys that I ran away with." P.H. also told the nurse that Ignacio Talamendez had "sexually assaulted" her. She said that "at first it was kind of a consensual thing but I told him to stop and he kept going." Then, P.H. purportedly told Shonna that she had really had sex with Anthony, her boyfriend, that night. She had said that it was Ignacio because her father was really strict about letting her see Anthony. Apparently this event upset P.H. so much that she threatened to commit suicide and was admitted to the state hospital shortly thereafter. The charged offenses were alleged to have happened about a month after she was released from the state hospital.

This evidence is strong support for appellant's theory that P.H. had a motive to falsely accuse him of sexual molestation. It also demonstrates that P.H. was not above changing her story of a consensual sexual encounter with her boyfriend into a nonconsensual one with someone else to prevent her father from learning the truth and presumably punishing her for running away and having sex with Anthony.

This evidence was admissible–unless excluded under Rule 403–to prove P.H.'s bias against appellant and to show her purported motive in falsely accusing him.[34] The Texas

---

[34] *See United States v. Stamper*, 766 F. Supp. 1396 (W.D.N.C. 1991) (defendant's evidence that rape victim had previously made false accusations of sexual assault against other men was admissible to show her "scheme of fabrication" to manipulate her custodians, avoid therapy, and similar motives). In *Stamper*, the defendant, charged with statutory rape, sought to cross-examine the victim and present extrinsic evidence to prove that in the past, the victim had falsely accused three adult men of sexual abuse in order to move from the home of one biological parent to the other and back again and to achieve other personal goals. *Id.* at 1402. The district court quoted *Davis,* saying that the "'exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.'" *Id.* at 1400. Noting the lack of physical evidence of rape, the court stated that the victim was a crucial or key

Rules of Evidence do not contain a specific rule allowing the admission of bias or motive evidence (maybe because the right to impeach a witness on these bases is so obvious), but Rule 613(b) presumes the right to admit such evidence because it deals with *how* the witness may be examined concerning bias or interest and *when* extrinsic evidence of that bias or interest may be admitted.  Furthermore, appellant properly invoked Rule 412, which contains an explicit "motive or bias" exception to the bar against evidence of an alleged  victim's previous sexual conduct.[35]  Finally, the Confrontation Clause might well have required the admission of this evidence showing P.H.'s motive to fabricate if appellant had not been able to show that motive through other means–even if that evidence had been barred under state evidentiary rules.[36]  In this case, however, appellant's general defensive theory was presented to the jury through alternate testimony.

The trial court appears to have understood that this evidence was probative to show

---

witness.  *Id.*  Thus, in order "to confront the complainant effectively, to elucidate the facts and legal issues here in question fully, and to present a defense in a constitutionally viable trial, Defendant must be allowed to set before the jury the proffered evidence of ulterior motives of the complainant."  *Id*.  Distinguishing this case from those in which the defendant sought only to impeach the victim's general credibility with the prior false accusation, the court held that the defendant" is entitled to offer the evidence necessary to prove his theory of the case by showing that complainant's charges against him did not evince a single isolated instance of manipulative behavior, but rather were part of an ongoing scheme or, at least, a scheme revealed by the like motives and *modus operandi* of schemes past."  *Id*. at 1402. The court held the evidence admissible under Federal Rule 404(b).  *Id.* at 1406.

[35] T EX. R. EVID. 412(b)(2)(C).

[36] *See Potier v. State*, 68 S.W.2d 657, 663-65 (Tex. Crim. App. 2002) ("We hold that the exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense.").

P.H.'s motive to testify because she excluded it only under Rule 403, not some general rule barring all such evidence of motive and bias. She repeatedly stated that she was excluding this evidence because its "prejudicial effect outweighed its probative value." Relevant evidence may be excluded under Rule 403 only if its probative value is substantially outweighed by the danger of unfair prejudice.[37] Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice.[38] The rule envisions exclusion of evidence only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value."[39]

Because Rule 403 permits the exclusion of admittedly probative evidence, it is a remedy that should be used sparingly,[40] especially in "he said, she said" sexual-molestation

---

[37] Rule 403 reads, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

[38] *McFarland v. State*, 845 S.W.2d 824, 837 (Tex. Crim. App. 1992), *overruled on other grounds*, *Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994); *Green v. State*, 840 S.W.2d 394, 410 (Tex. Crim. App. 1992).

[39] *Connor v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001); *Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992).

[40] *See Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App.1990) (op. on reh'g) (presumption under Rule 403 is that probative value outweighs prejudicial effect "unless in the posture of the particular case the trial court determines otherwise"); *see also Conner v. State,* 67 S.W.3d 192, 202 (Tex. Crim. App. 2001) ("Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value"); *State v. Mechler*, 153 S.W.3d 435, 443-44 (Tex. Crim. App. 2005) (Cochran, J., concurring) (all Rule 403 rulings are subject to three general considerations: "1) the trial judge should exercise his power to exclude evidence under Rule 403 sparingly; 2) the trial judge's discretion under Rule 403 is not an invitation to rule reflexively or without careful reasoning; 3) the trial judge may not exclude evidence merely because he disbelieves the testimony"); *see*

cases that must be resolved solely on the basis of the testimony of the complainant and the defendant.[41]  In this case, the trial judge may have used the correct balancing test, but there is nothing in the record to show that she also took into account the possible constitutional ramifications of an exclusion of all of appellant's evidence offered to demonstrate P.H.'s motive to testify against appellant.  Although there is considerable prejudice in allowing P.H. to be cross-examined about her sexual conduct with her boyfriend, her anger at appellant for requiring her to undergo a sexual assault examination, and her various statements to the nurse, this is not "unfair" prejudice because it serves the important function of explaining precisely why P.H. might be motivated to falsely accuse appellant and to accuse him of the very same conduct that she accused her uncle of doing when she was thirteen.

We conclude that the trial court abused her discretion in preventing appellant from (1) cross-examining P.H. concerning the contents of the medical records when appellant took her to the hospital to be examined for a possible sexual assault; (2) offering those records into evidence if P.H. denies their accuracy; and (3) offering Shonna's testimony that P.H. told her

---

*genrally,* 1 JACK WEINSTEIN & MARGARET BERGER, WEINSTEIN'S EVIDENCE ¶ 403[01], at 403-10 (1998) ("If there is any doubt about the existence of unfair prejudice, confusion of the issues, misleading, undue delay or waste of time, it is generally better practice to admit the evidence taking necessary precautions by way of contemporaneous instructions to the jury followed by additional admonitions in the charge").

[41] *See Lopez v. State*, 18 S.W.3d 220, 227 (Tex. Crim. App. 2000) (Keller, J., concurring); *see also People v. Hurlburt*, 333 P.2d 82, 83 (Cal. Ct. App. 1958) ("As is usual in such cases, the prosecution was forced to rely primarily on the testimony of the complaining witness to establish its case, while the defense, by necessity, was forced to rely almost entirely on the denials of the defendant. Thus, the credibility of the complaining witness was one of the basic issues presented to the jury."); *Miller v. State*, 779 P.2d 87, 89 (Nev. 1989).

that the sexual activities that night were consensual and with her boyfriend, not assaultive

with Ignacio Talamendez.  This evidence, relating to events occurring shortly before the two

alleged sexual encounters at issue in this trial and relevant to P.H.'s animus toward appellant

and her desire to get out of his house, is demonstrably more probative than prejudicial in

establishing her motive to testify.  There is nothing in the record that would support a finding

that its prejudicial effect outweighed its probative value, much less why its probative value

was *substantially* outweighed by the danger of *unfair* prejudice.

The other evidence that the trial judge excluded, as noted by the court of appeals,

included:

(1)    The contents of P.H.'s journal.[42]  We agree that, because the journal was not produced and the contents are unknown, appellant failed to show that they have any relevance;

(2)    The fact that P.H. told others that she had been sexually molested by her mother's boyfriends.[43]  We agree that there was no showing that these accusations were, in fact, false or that they were similar to the accusation P.H. made against appellant.[44]  However, it is highly unlikely that she was molested by *all* of her mother's boyfriends.  A rational factfinder might, under Wigmore's doctrine of chances,  reasonably conclude that at least some of these accusations, if not all, were false.[45]

---

[42] *Hammer*, 256 S.W.3d at 394-95.

[43] *Id.*

[44] *See Lopez v. State*, 18 S.W.3d 220, 226 (Tex. Crim. App. 2000) ("Without proof that the prior allegation was false or that the two accusations were similar, the evidence fails to have any probative value in impeaching [complainant's] credibility in this case.  For these same reasons, the risk that this evidence would unduly prejudice and confuse the jury was high.").

[45] *See De La Paz v. State*, ___ S.W.3d __, ___, No. PD. 0292-08 & 0298-08, 2009 WL 774846 at * 8-9 (Tex. Crim. App. March 25, 2009).

(3)     The proffered testimony by P.H.'s grandmother that P.H. and her cousin lied about being held at knife point by five men who threatened to rape them, but admitted when they returned home that they had just run away.[46]  We agree that appellant failed to make a sufficient evidentiary connection or argument to establish the independent probative value of this evidence, but it, along with P.H.'s allegations about her mother's boyfriends, is one more episode, under the doctrine of chances, that makes all of her allegations of sexual misconduct somewhat less likely;

(4)     The evidence that P.H. was found "at the Ag. Barn lying on the ground with her boyfriend" seems to have no probative value except to show the victim's purported promiscuity, an evidentiary use that is strictly prohibited by Rule 412.  No one suggested that the school official's report of P.H.'s activity was false or that the incident was similar to that involving appellant.[47]

We agree with the court of appeals that the trial judge did not abuse her discretion or rule "outside the zone of reasonable disagreement" in excluding evidence of the journals or of the "Ag. Barn" incident, but the other evidence was admissible under the doctrine of chances.[48]

In sum, we hold that the trial judge abused her discretion in preventing appellant from cross-examining P.H. about the hospital incident, her allegations that "all of her mother's boyfriends had sexually molested her," the incident about being held at knife point by five men, and her statements to Shonna concerning the purported sexual assault by Ignacio Talamendez to demonstrate her bias against appellant and her possible motive to testify falsely against him.  Because the parties have not briefed the issue of harm on discretionary

---

[46] *Hammer*, 256 S.W.3d at 394.

[47] *Id.* at 395.

[48] *Id.* at 395-96.

review, and the court of appeals has not yet had an opportunity to address this issue under

Rule 44.2(b), we reverse the judgment and remand the case to the court of appeals for further

proceedings consistent with this opinion.

Delivered: April 8, 2009

Publish