# Court of Appeals
## Tenth Appellate District of Texas

---

10-24-00151-CR

---

Generoso Polendey Taclibon,
Appellant

v.

The State of Texas,
Appellee

---

On appeal from the
52nd District Court of Coryell County, Texas
Senior Judge Roy Sparkman, presiding
Trial Court Cause No. 21-26856

---

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

A jury convicted Appellant Generoso Polendey Taclibon of the first-degree felony offense of continuous sexual abuse of a young child. *See* TEX. PENAL CODE ANN. § 21.02(b). The jury assessed punishment at seventy-five years' confinement, and the trial court sentenced him accordingly. In three issues, Taclibon argues that (1) the trial court denied his right to present a meaningful defense by excluding his proffered evidence, (2) the State relied on

false testimony to secure a conviction, and (3) the trial court abused its discretion by denying his motion for new trial. We affirm.

## A. Background

Because there is no challenge to the sufficiency of the evidence, we will only briefly discuss the underlying facts. Taclibon's daughter, E.T., and Kennedy Carter became best friends when they were approximately eight years old.[1] Kennedy was frequently at the Taclibon's house and spent the night there multiple times. The Taclibons considered Kennedy to be a part of their family.

Kennedy, who was sixteen years old at the time of trial, testified that the first incident with Taclibon occurred when he was giving her and E.T. a piggyback ride. Kennedy explained that when Taclibon put her down, he touched her private parts over her clothes. She thought it might have been an accident, but it began happening on a regular basis after that first incident.

Kennedy stated that initially Taclibon would touch her privates over her clothes, but that it escalated over time. Kennedy testified that when she would spend the night with E.T., Taclibon would come into the bedroom at night, pull down her pants and underwear, and touch her privates with his hand and

---

[1] We will refer to the complainant as Kennedy Carter, the pseudonym at trial. We will refer to all other minors by their initials.

mouth. Kennedy said that on one occasion, Taclibon took her into the guest room of his house and tried to put his male part into her privates.

Kennedy described a time when she and Taclibon were in E.T.'s closet and Taclibon had removed her pants and underwear and was touching her privates with his mouth and hand. Kennedy said that Taclibon's son came into the room and asked what was happening. Kennedy told him that Taclibon was helping her look for something. Taclibon's son testified at trial that he saw Kennedy and his father in E.T.'s closet and that he told E.T. what had happened. He did not remember saying that Kennedy was not wearing pants. E.T. testified that her brother told her about seeing Kennedy and Taclibon in the closet. She acknowledged that she had told a police officer that her brother said Kennedy did not have on pants, but she maintained that she only told the detective what he wanted to hear.

Kennedy testified that Taclibon had touched her inappropriately for several years. When she was thirteen years old, Kennedy told her coach at school what Taclibon had been doing to her. Kennedy and her parents went that same day to the police station to report the abuse. On July 22, 2021, Taclibon was indicted for the offense of continuous sexual abuse of a young child. He was tried before a jury for that offense, and the trial ended in a mistrial when the jurors could not reach a unanimous verdict.

Sometime after the original indictment, Taclibon's niece also made an allegation against him. She testified at trial that when she was nine years old, Taclibon rubbed her private part in an aggressive manner when he was helping her dry off after getting out of the swimming pool. Her mother reported the incident to the police.

A superseding indictment was filed on March 21, 2024. That indictment included seven counts:

> Count 1: continuous sexual abuse of a child,
> Counts 2 and 3: indecency with a child by contact,
> Counts 4 and 5: aggravated sexual assault of a child,
> Count 6: indecency with a child,
> Count 7: aggravated sexual assault of a child.

Count 1 included the allegation that Taclibon touched the genitals of his niece.[2] The jury convicted Taclibon of the offense of continuous sexual abuse of a child, and this appeal followed.

## B. Issue One

In his first issue, Taclibon argues that the trial court's erroneous exclusion of evidence prevented him from presenting a meaningful defense as guaranteed through the due process clause of the Sixth and Fourteenth Amendments of the United States Constitution.

---

[2] Taclibon does not raise any argument on appeal concerning his niece.

1. Authority

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. See *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). "Appellate courts will uphold a trial court's ruling on the admissibility of evidence as long as the trial court's ruling was at least within the 'zone of reasonable disagreement.' " *Page v. State*, 213 S.W.3d 332, 337 (Tex. Crim. App. 2006).

Rule of Evidence 403 allows for the exclusion of relevant evidence if the probative value of the evidence is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. TEX. R. EVID. 403.

Rule of Evidence 412 provides that in prosecutions for sexual assault offenses, reputation or opinion evidence of the victim's past sexual behavior and specific instances of the alleged victim's past sexual behavior are generally not admissible. *See* TEX. R. EVID. 412. However, Rule 412 provides an exception which reads in part:

> (b) **Exceptions for Specific Instances.** Evidence of specific instances of a victim's past sexual behavior is admissible if:
> (1) the court admits the evidence in accordance with subdivisions (c) and (d);
> (2) the evidence:
> (A) is necessary to rebut or explain scientific or medical evidence offered by the prosecutor;

(B) concerns past sexual behavior with the defendant and is offered by the defendant to prove consent;
(C) relates to the victim's motive or bias;
(D) is admissible under Rule 609; or
(E) is constitutionally required to be admitted; and
(3) the probative value of the evidence outweighs the danger of unfair prejudice.

TEX. R. EVID. 412.

Rule of Evidence 608(b) provides that a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness. TEX. R. EVID. 608(b).

2. Discussion

Taclibon specifically complains that the trial court erred by excluding evidence of (1) false allegations of sexual abuse made by Kennedy, (2) Kennedy wanting to be a part of the 97% Club, (3) Kennedy's texts about having a sugar daddy, and (4) Kennedy "catfishing" other people.

Prior to trial, the trial court conducted a hearing on the State's motion in limine regarding the complained of evidence and granted the State's motion. The following day, before hearing testimony, the trial court again had a lengthy discussion on the admissibility of the evidence, specifically evidence of catfishing. The trial court expressed concern over any evidence of catfishing and instructed Taclibon's counsel not to reference catfishing in front of the jury. The trial court noted it would revisit its ruling if catfishing became relevant.

The trial court further expressed concern over any evidence of the 97% Club in relation to Rule 403, noting that it would be confusing to the jury.

At the end of the first day of testimony, the trial court again considered the admission of the complained of testimony. The trial court allowed Taclibon to present testimony from E.T. in support of his argument. E.T. explained that the 97% Club referred to women who had been sexually harassed or assaulted. She stated that Kennedy talked about the club "like she wanted to be a part of it." E.T. also said that Kennedy had told her she catfishes people, meaning that she uses a different persona to talk to someone. She testified that Kennedy had talked to her about sugar daddies and that it was "weird." E.T. also testified that Kennedy had made other allegations of sexual abuse.

The trial court determined that any evidence of Kennedy wanting to be a member of the 97% Club was inadmissible under Rule 403, noting that the testimony was speculative because it was based upon E.T.'s belief that Kennedy wanted to be a part of the club. The trial court also ruled that evidence of catfishing, sugar daddies, and prior allegations would not be allowed into evidence.

The next day, the trial court further explained its reasoning in excluding the evidence. The trial court stated that based upon what it had heard so far, the evidence on those topics would be precluded by Rules 403, 412, or 608(b). The trial court further noted that some of the evidence was purely speculative

and would be confusing to the jury. Taclibon's counsel argued that the trial court's rulings amounted to a constitutional violation by precluding him from presenting his defensive theories.

The next day of trial, the trial court again considered the complained of evidence. After reviewing a defense exhibit that appeared to be a screenshot of a text message attributed to Kennedy that said she had a sugar daddy, the trial court determined that the evidence could raise the issue of motive for her filing her complaint. There had been testimony that Taclibon had given Kennedy a phone after her parents had punished her by taking away her phone. Taclibon presented evidence that he demanded Kennedy return the phone. The trial court reasoned that if Kennedy considered Taclibon to be her sugar daddy, and he took the phone away, that could be motive for her filing the complaint. The trial court stated it would allow limited evidence of Kennedy's use of the term "sugar daddy."

The trial court permitted Taclibon to present evidence for his bill of exception. A.J. testified that she does not remember testifying previously that Kennedy had catfished people. She also could not recall what Kennedy said about the 97% Club. A.J. also offered vague testimony about Kennedy making a prior accusation that a teenage boy had raped her. Taclibon called E.T. to testify for the bill of exception. She again stated that Kennedy had told her that she had catfished someone. She also recalled Kennedy making an

accusation that a teenage boy had sexually assaulted her. E.T. also testified about two other boys who Kennedy had accused of inappropriate sexual behavior. E.T. said that she had asked other people about those accusations, and they said they were false. E.T. further testified that Kennedy had talked about the 97% Club and "[i]t's like she wanted to be a part of it." According to E.T., Kennedy also had said that she had sugar daddies.

A.R. testified for the bill of exception that Kennedy had said that she had sugar daddies. She also recalled Kennedy making an allegation of sexual abuse against a boy. A.R. was unsure if she believed Kennedy about the allegation. A.R. did not recall Kennedy making allegations against other boys. J.S. testified that she had not heard about Kennedy making allegations against the three boys.

Kennedy also testified in the bill of exception. She denied making any allegation of sexual abuse against two of the boys. Regarding the third boy, she said that he had put his hand on her knee and made her uncomfortable, but that she did not make an allegation of sexual abuse. She denied talking to any of her friends about the 97% Club. She acknowledged that she had talked to her friends about having a sugar daddy. She explained that her friends were the ones who used the word "sugar daddy" and that she had used it in a joking manner.

After Taclibon presented his evidence, the trial court ruled that the evidence of prior allegations made by Kennedy was inadmissible under Rules 412 and 608(b). The trial court found that the evidence on the 97% Club was inadmissible because it was too speculative. The trial court further continued its prior ruling with respect to catfishing. The trial court did allow limited questioning on Kennedy's use of the word "sugar daddy."

Taclibon argues that the trial court's ruling excluded otherwise relevant, reliable evidence which formed such a vital portion of his case that it effectively precluded him from presenting a defense. He maintains that the complained of evidence was key to his defense because it went to Kennedy's credibility.

**False Allegations of Sexual Abuse**

Taclibon sought to introduce evidence that Kennedy had made false allegations against three boys after her initial accusation against him. A criminal trial is designed to find the truth about a specific incident, not to decide whether someone has lied in the past about being raped. *Hammer v. State*, 296 S.W.3d 555, 564 (Tex. Crim. App. 2009). Prior false allegations of rape do not tend to prove or disprove any of the elements of the charged sexual offense. *Id*. A sexual assault complainant is not a volunteer for an exercise in character assassination. *Id*. However, evidence of false prior accusations may, under certain circumstances, be admissible to show a victim's motive or bias against the defendant. *Id*. at 565-56.

While evidence of prior accusations of sexual abuse may be admissible to impeach the credibility of a complainant, there must be a showing that such evidence is probative. *Aleman v. State*, No. 07-23-00142-CR, 2024 WL 952066, at *3 (Tex. App.—Amarillo Mar. 5, 2024, no pet.); *Lempar v. State*, 191 S.W.3d 230, 239 (Tex. App.—San Antonio 2005, pet. ref'd). In order to be considered probative, there must be evidence that the prior accusations were similar to the accusations in the instant case and that the prior accusations were false. *See Lopez v. State*, 18 S.W.3d 220, 226 (Tex. Crim. App. 2000); *Aleman*, 2024 WL 952066 at *3; *Lempar*, 191 S.W.3d at 239.

There is no evidence that the prior allegations were similar to the accusations against Taclibon. The proffered testimony about the other allegations was vague. Only E.T. testified as to all three allegations, and her testimony did not establish that the allegations were similar to those against Taclibon. All three allegations were against teenage boys and involved a single encounter. Kennedy's allegations against Taclibon, a 67-year-old man, involved years of sexual abuse that started when she was eight years old and continued until she reported it at age thirteen. In addition, Kennedy denied making the allegations. There was no evidence that Kennedy reported any other allegations to the police or other authorities and that they were proven to be false. *See Biggers v. State*, No. 10-16-00064-CR, 2017 WL 1540708 at *4 (Tex. App.—Waco April 26, 2017, no pet.).

Because the evidence of the other allegations was not similar to the allegations against Taclibon and were not proven to be false, the evidence was not probative. *Lopez*, 18 S.W.3d at 226. The evidence does not show Kennedy's motive or bias. *See Hammer*, 296 S.W.3d at 566. Moreover, Taclibon agreed that at least one of the allegations would be inadmissible under Rule 412. We cannot conclude that the trial court abused its discretion by excluding evidence of false allegations. *See Biggers*, 2017 WL 1540708 at *4.

**97% Club**

Kennedy denied talking to any of her friends about the 97% Club. A.J. said that Kennedy had mentioned the club, but she could not remember what she had said about it. E.T. believed that Kennedy wanted to be a part of the club. The trial court determined that the evidence was speculative. We agree. E.T.'s testimony that it was "like" Kennedy wanted to be a part of the club does not establish that Kennedy lied about such allegations. Even if the evidence was relevant, the trial court did not abuse its discretion by denying its admission under Rule 403 as its probative value was outweighed by the danger of confusing the issues or misleading the jury. TEX. R. EVID. 403.

**Kennedy's Reference to a Sugar Daddy**

The trial court allowed Taclibon to question Kennedy about having a sugar daddy for the limited purpose of showing a motive to make the allegations after Taclibon took away a phone that he had given to her. Taclibon

was able to introduce evidence that Kennedy had said in a text message that she had a sugar daddy. Kennedy admitted she wrote the text and explained that it was a joke. It is not clear what other evidence concerning a sugar daddy Taclibon sought to introduce. Taclibon was able to present evidence of a sugar daddy as it related to Kennedy's motive to fabricate the allegation. We cannot conclude that the trial court abused its discretion in relation to evidence of a sugar daddy.

**Catfishing**

Taclibon sought to introduce evidence that Kennedy had engaged in catfishing—using a false identity to deceive others. A.J. testified that she does not know anyone who catfishes people. She did not remember testifying previously that Kennedy had catfished people and she could not say it is true that Kennedy had catfished people. E.T. stated that Kennedy told her she catfished people.

There was no evidence that Kennedy engaged in catfishing Taclibon or that it was relevant for any purpose other than to attack Kennedy's credibility. Therefore, evidence that Kennedy engaged in catfishing would be a specific instance of conduct prohibited by Rule 608(b). The trial court did not abuse its discretion in denying admission of the evidence.

Taclibon argues that he was prevented from presenting a vital portion of his defense that Kennedy was fabricating the allegations. However, he argued

in both his opening and closing statements that Kennedy was lying. He was allowed to present testimony that Kennedy's reputation for truthfulness was not good. He also pointed out multiple discrepancies in her testimony.

The record shows that the trial court carefully considered Taclibon's arguments on multiple occasions throughout the trial. Based upon the record before us, we cannot conclude that the trial court abused its discretion by excluding the complained of evidence. We overrule the first issue.

## C. Issue Two

In his second issue, Taclibon contends that the State knowingly relied on Kennedy's false testimony to secure a conviction in violation of his right to due process.

### 1. Authority

A defendant's due-process rights can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly. *Ex parte Robbins*, 360 S.W.3d 446, 459 (Tex. Crim. App. 2011). To constitute a due-process violation, the testimony need not be perjured; rather, "false" testimony will suffice. *Id.* at 460. Although the caselaw frequently refers to "perjured" testimony, the offending testimony need not be perjured; the question is instead whether the testimony, taken as a whole, gives the jury a false impression. *Ex parte Chavez*, 371 S.W.3d 200, 208 (Tex. Crim. App. 2012); *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex.

Crim. App. 2011). Further, to constitute a due-process violation, the record must show that the testimony was material, meaning that there is a "reasonable likelihood" that the false testimony affected the jury's judgment. *Chavez*, 371 S.W.3d at 208.

2. Discussion

Taclibon specifically argues that the State relied on false testimony or evidence in two instances. The first involved a statement by Kennedy that she could never make up anything like this. The second involved a defense exhibit that Taclibon maintains shows a discrepancy between Kennedy's screenshot of a text message sent to her by Taclibon and the actual phone records.

During trial, there was testimony that during her sexual assault exam, Kennedy stated, "I don't even know how to lie about something like that." During the cross-examination of Kennedy, Taclibon's counsel asked her, "Is it accurate that you said you didn't know how to lie about this situation?" Kennedy responded that she would never lie about this situation. Taclibon argued to the trial court that he had extrinsic evidence that Kennedy had made a false allegation against one of the boys. As discussed in the first issue, the trial court did not allow Taclibon to present evidence of any other allegations.

Taclibon argues on appeal that the State knew Kennedy had made a false accusation leaving a false impression on the jury that goes to the heart of the issue, Kennedy's credibility. However, Kennedy denied making any

allegations of sexual abuse against the boys. There is no extrinsic evidence that Kennedy made a false allegation. Taclibon relies on E.T.'s testimony and the vague testimony of another witness as extrinsic evidence of a false allegation. The record shows a conflict in evidence rather than a false allegation. Discrepancies in testimony do not show perjury. *Losada v. State*, 721 S.W.2d 305, 312 (Tex. Crim. App. 1986). There is nothing in the record to show that the State conspired to present false testimony. *See id.*

The State admitted an exhibit of a screenshot from Kennedy's phone that depicted text messages from Taclibon to Kennedy. In one of the messages, Taclibon stated, "I think I deserve some love from all these. I'm stressed." Taclibon introduced an exhibit that he maintains shows the text message pattern in the phone records does not match the pattern on the screenshot image.

A police officer testified at trial Kennedy had deleted some of the text messages that Taclibon had sent to her. Kennedy also testified that she had deleted text messages from Taclibon because she did not want her parents to see them. However, there is nothing to indicate that the deleted text messages were favorable to Taclibon's defense. There was also no evidence that the text message in the screenshot was false. Taclibon does not appear to dispute that he sent the message but rather argues that there is a message missing from the pattern.

The record does not support Taclibon's argument that the State conspired to present false evidence. *See id.* Because the jury was aware that Kennedy had deleted some text messages from Taclibon, the jury was not left with a false impression. *See Chavez*, 371 S.W.3d at 208. The jury, as the sole judge of the witnesses' credibility and the weight to be afforded to their testimony, was able to resolve any issue concerning Kennedy's credibility concerning deleting text messages. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). On the record before us, we cannot conclude that there is a "reasonable likelihood" that the evidence was false or that it affected the jury's judgment. *Chavez*, 371 S.W.3d at 208. We overrule Taclibon's second issue.

## D. Issue Three

In his third issue, Taclibon argues that the trial court abused its discretion by denying his motion for new trial.

### 1. Authority

We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). We do not substitute our judgment for the trial court's judgment, but rather we determine whether the trial court's decision was arbitrary or unreasonable. *Id.* A trial judge abuses his discretion in denying a motion for new trial when no reasonable view of the record could support his ruling. *Id.*

2. Discussion

The trial court held a hearing on Taclibon's motion for new trial, and Taclibon had witnesses available to testify. The trial court would not allow live testimony and ordered affidavits to be submitted within ten days of the date of the hearing.

At the hearing, Taclibon argued that the verdict was contrary to the law and evidence because Kennedy's testimony was proven to be false as it related to the deleted text messages and false allegations made against the three boys. He also argued that he was denied his right to present a defense and cross-examine witnesses because the trial court refused to admit his evidence of (1) Kennedy's false allegations against the three boys, (2) Kennedy's references to having a sugar daddy, and (3) Kennedy engaging in catfishing. The State responded that the trial court's rulings at trial were based upon the same arguments that Taclibon was making at the hearing.

After the hearing, Taclibon filed affidavits from three individuals. Taclibon had offered the testimony of all three of those individuals during trial for his bill of exception. J.S. stated in her affidavit that her testimony at trial "was not completely accurate." She stated that Kennedy had told her that she had been sexually abused by one of the boys, but J.S. knew it was not true. Taclibon's investigator stated in his affidavit that he had discovered through his investigation that Kennedy had made false allegations against the three

boys.  A.R. stated in her affidavit that Kennedy had told her that she had been sexually assaulted by one of the boys.  The trial court reviewed the affidavits but allowed the motion for new trial to be overruled by operation of law.

Taclibon argues on appeal that the trial court's decision was "unreasonable in light of the affidavits which cast a serious shadow over [Kennedy's] credibility."  However, none of the affidavits present any new evidence.  The trial court had previously considered the evidence of Kennedy's false allegations against the three boys and ruled that it was inadmissible.  We concluded in the first issue that the trial court did not abuse its discretion by excluding that evidence. Because Taclibon's arguments in support of his motion for new trial were based upon the same evidence offered at trial that we found to be properly excluded, we hold that the trial court did not abuse its discretion in denying Taclibon's motion for new trial.  *See id.*  We overrule the third issue.

## E. Conclusion

Having overruled all of Taclibon's issues on appeal, we affirm the trial court's judgment.

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: March 5, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
Do not publish
CRPM

