

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00253-CR

| | | |
|---|---|---|
| Joe Dale Johnson | § | From the 89th District Court |
| | § | of Wichita County (48,790-C) |
| v. | § | February 14, 2013 |
| | § | Opinion by Justice Dauphinot |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was error in the trial court's judgment. It is ordered that the judgment of the trial court is reversed as to the indecency with a child by contact conviction and sentence, that that conviction and sentence are set aside, and that Appellant is acquitted of Count Three of the indictment. It is further ordered that the trial court's judgment is reversed as to the two aggravated sexual assaults alleged in Counts One and Two of the indictment, and this case is remanded to the trial court for a new trial on those two counts only.

SECOND DISTRICT COURT OF APPEALS


By_____
Justice Lee Ann Dauphinot



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00253-CR

JOE DALE JOHNSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

### FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Joe Dale Johnson of two counts of aggravated sexual assault of a child and one count of indecency with a child, enhanced, and assessed his punishment at life imprisonment. The trial court sentenced him accordingly. In three issues, Appellant argues (1) that the evidence is insufficient to support his conviction for indecency with a child by contact because such alleged

---

[1]*See* Tex. R. App. P. 47.4.

contact is subsumed in the first count of aggravated sexual assault of a child and convictions for both violate double jeopardy protections; (2) that the trial court abused its discretion by excluding evidence that the complainant had sexually assaulted his younger sister; and (3) that the trial court abused its discretion by admitting evidence of Appellant's thirty-year-old prior conviction at the guilt phase of trial. Because the evidence is insufficient to support both Count One and Count Three, we reverse the trial court's judgment as to Count Three, set aside Appellant's conviction and sentence for indecency with a child by contact, and enter a judgment of acquittal on Count Three. Because the trial court reversibly erred by refusing to allow Appellant to correct a confusing or misleading impression on the jury by putting on evidence of the complainant's prior, sexual misconduct, we reverse the trial court's judgment as to Counts One and Two and remand this cause to the trial court for a new trial on those counts.

**Background Facts**

Complainant H.H. was a twelve-year-old boy who was participating in court-ordered counseling for sexually molesting his ten-year-old sister over several years. He had also been caught shoplifting and had strained relationships with his parents. Appellant, a man in his fifties and a board member of the church that he and the complainant attended, had previously been convicted of a sexual offense against a teenage boy thirty years before in Kansas. Appellant and the complainant spent time together, and the complainant accepted work mowing Appellant's and other church members' lawns for pay. The complainant testified that Appellant had lured

4

him into Appellant's study and that Appellant had seduced him into allowing Appellant to perform fellatio on him and sought to have the complainant perform fellatio on Appellant. The complainant eventually told the youth minister, who was never interviewed by law enforcement and did not testify at trial, what had happened. The youth minister went to the complainant's parents to tell them what their son had told him. The parents, in turn, reported what they had been told to the Burkburnett Police Department. The purported offenses were alleged to have occurred in April 2007.

At trial, Appellant sought to elicit testimony that the complainant had been adjudicated delinquent for sexually molesting his ten-year-old sister and, among other things, was in court-ordered counseling as a result. On appeal, Appellant argues that the excluded evidence (1) was admissible to rebut the false impression the State had left with the jury regarding the primary reason the complainant was in counseling, thereby opening the door for the sexual abuse evidence; (2) impeached the complainant's testimony that his guilt in being the victim of sexual abuse was relieved when he made his outcry; and (3) supported the defense's theory that the complainant had fabricated the abuse allegations against Appellant to get attention and sympathy for himself. In the trial court, Appellant offered the evidence on the basis that under the Sixth Amendment, cross-examination is the fundamental right of a defendant, affecting due process. He argued that the evidence showed the complainant's mental state at the time he made the outcry and what he was in counseling for. He also argued that the complainant's past sexual behavior could be

5

motive or bias for making the outcry, not only for deception, but to get attention, and that the evidence was admissible to show the complainant's knowledge of sexual matters.

**Double Jeopardy**

In his third issue, Appellant argues that because the crime of indecency with a child by contact, as alleged in Count Three of the indictment, was subsumed in the crime of aggravated sexual assault of a child as alleged in Count One of the indictment, the evidence is insufficient to show that Appellant committed a separate indecency offense as alleged in the indictment. He further argues that having two convictions rely on the same act of touching violates double jeopardy protections. The record clearly shows that the sexual contact proved at trial occurred during and as part of the aggravated sexual assault alleged in Count One. As the State candidly concedes, to allow both convictions to stand would violate the double jeopardy clause of the Constitution of the United States.[2] Because the contact alleged in Count Three was subsumed in the aggravated sexual assault of a child alleged in Count One, we sustain Appellant's third issue. We reverse the trial court's judgment as to Count Three, set aside Appellant's conviction and

---

[2]*See* U.S. Const. amend. V; *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh'g).

6

punishment for indecency with a child by contact as alleged in Count Three,[3] and enter a judgment of acquittal on Count Three.[4]

## Evidentiary Issues

### The Complainant's Prior Bad Acts

In his first issue, Appellant contends that the trial court erred by excluding evidence in violation of the Sixth Amendment, the Due Process Clause, and rules of evidence 404(B) and 412 that the complainant had sexually assaulted his younger sister. Appellant argues that "[t]he evidence that the alleged victim had sexually molested his little sister was admissible because the State left a false impression with the jury during its direct exam of the alleged victim and because it was admissible to show his mental status at the time of his alleged outcry."

The State concedes that Appellant preserved his constitutional complaint but argues that he failed to preserve that portion of his complaint concerning the State's creating a false impression. After reviewing the record, we disagree. In offering the evidence, defense counsel argued,

---

[3]*See Bigon v. State*, 252 S.W.3d 360, 373 (Tex. Crim. App. 2008) (retaining first-degree felony as "most serious offense" over second-degree felony with identical sentence); *Ex parte Pruitt*, 233 S.W.3d 338, 348 (Tex. Crim. App. 2007) (holding genital contact subsumed within alleged incident of penetration is lesser included offense of penetration); *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (holding penile contact with genitals in course of penile penetration subsumed).

[4]*See Bigon*, 252 S.W.3d at 373.

And the *Merch* case and others have said that the—the person's mental state at the time that, you know, he—he makes this outcry, I think is relevant and what's going on in his head. And he said that it affected his mental state. That's what he was in counseling for and so I think it goes in for that.

Indeed, Appellant's entire defense was an attempt to show that the State was creating the false impression that the complainant was a victim, a child who was emotionally distraught over being victimized and sufficiently innocent to be embarrassed to discuss it. The State wanted to create the impression with the jury that the complainant was truthful; Appellant wanted to show the jury that the complainant was a liar. Appellant's position throughout the trial, which he has maintained on appeal, was that the State created the false impression that the complainant was innocent in sexual matters. That was an impression that Appellant sought to dispel at trial and now seeks to dispel on appeal. We therefore hold that Appellant sufficiently preserved this entire issue for appellate review.

Outside the presence of the jury, the complainant testified that he had sexually abused his younger sister both before and after Appellant's sexual assaults on him. The complainant also testified that his parents put him in counseling because he was sexually abusing his sister. There was evidence that the counseling was court-ordered as a result of the complainant's sexual abuse of his younger sister over several years. Sexual abuse of his sister was one of the things that the complainant was struggling with in November 2007 and contributed to his emotional difficulties. Before the jury, however, the complainant's father testified that the complainant was being bullied at school, suffering from depression, had a

8

stressful relationship with his parents, and had been caught shoplifting. Watching pornography was also an issue. The complainant's father testified that those were the reasons that he and his wife had placed the complainant in counseling, although, when asked if the complainant was in counseling before April 2007, his father testified that he could not remember when counseling began. The following exchange occurred before the jury:

> Q. Okay. And so he—you would agree with me that during the fall of 2007, including November of '07—November of 2007, he was dealing with a lot of issues, correct?
>
> A. There were issues, yes.
>
> Q. And he was having emotional difficulties, correct?
>
> A. Yes.

Outside the presence of the jury, the complainant testified to the sexual abuse of his sister. In the jury's presence, he testified that Appellant had sexually abused him. He also testified about his use of pornography and stealing. He said that he had watched pornography for a long time. According to his father, the complainant had viewed pornography at least since he was ten years old. But the complainant also testified that he had gone four months without watching pornography until Appellant influenced him to start watching pornography again. The complainant also testified that he was angry at Appellant because Appellant had let him play with a Nintendo DS that had been donated to the church but then took the DS away from him. Then the complainant testified,

9

Q. At some point you made the decision to tell someone about the sexual acts [by Appellant against the complainant]?

A. Yes.

Q. Why did you decide to do that?

A. Because after the DS wasn't allowed to come to the teen group, I was at first pretty angry that I didn't get the DS like I wanted, but then I got to thinking about it and then I thanked Jimmy for not letting us have it. That was the teen leader that didn't allow it to come through. And I told him that I was thankful for it[,] and he said that—why are you glad that that didn't happen? I said, well, let's just say I can't tell you. And he said, well, that sounds a lot like something that happened to me.

Q. And then—and then did you tell him what happened to you?

A. Yes.

Q. Did you tell him everything?

A. Yes.

Q. How did you feel when you told him?

A. I felt better, like a weight off my shoulders . . . .

The State argues that the rules of evidence and the family code prevented impeachment by a juvenile adjudication and that the evidence was not relevant to Appellant's theory of fabrication. We disagree. The Texas Court of Criminal Appeals has set out a hierarchy for situations in which there is a conflict between the caselaw and its rules. Rule of Evidence 101(c) states that in criminal cases,

> [h]ierarchical governance shall be in the following order: the Constitution of the United States, those federal statutes that control states under the supremacy clause, the Constitution of Texas, the Code of Criminal Procedure and the Penal Code, civil statutes, these

10

rules, and the common law. Where possible, inconsistency is to be removed by reasonable construction.[5]

The Texas Court of Criminal Appeals addressed the appropriate balancing of interests between rule 403 and a defendant's right to confront and cross-examine his accuser and to present his defense in a sexual assault case in *Hammer v. State*:

> Trials involving sexual assault may raise particular evidentiary and constitutional concerns because the credibility of both the complainant and defendant is a central, often dispositive, issue. Sexual assault cases are frequently "he said, she said" trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence. Thus, the Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such "he said, she said" cases. And Texas law, as well as the federal constitution, requires great latitude when the evidence deals with a witness's specific bias, motive, or interest to testify in a particular fashion.[6]

The *Hammer* court concluded that "the constitution is offended if the state evidentiary rule would prohibit him from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory."[7]

In presenting its case and in jury argument in the trial court, the State repeatedly referred to the reluctance of a boy the complainant's age to admit to the

---

[5]Tex. R. Evid. 101(c).

[6]296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009) (footnotes omitted).

[7]*Id.* at 562–63.

sexual acts that he claimed Appellant committed against him, essentially natural shyness to speak of sexual matters. Further, the State repeatedly spoke of the grooming that would cause an innocent young man to become the victim of a sexual predator. Finally, the prosecutor began the State's rebuttal final argument by reminding the jury that he had told them during opening statement that "this case is about a deviant man who took sexual advantage of a young boy . . . [,] how [Appellant] took sexual advantage of [the complainant] for [Appellant's] own pleasure and . . . manipulated [the complainant,] . . . and these are the aftereffects that you've heard about this week." Final argument continued in this vein until the very end.

The State left the impression with the jury that the complainant's emotional problems, watching pornography, conflict with his parents, and need for counseling all arose as a result of his victimization by school bullies and by Appellant, who caused him to participate in sexual activities. This was a false impression that Appellant was entitled to rebut[8] as part of his fundamental due process right to confront and cross-examine witnesses against him in challenging the State's case.[9]

---

[8] *See Renteria v. State*, 206 S.W.3d 689, 697–98 (Tex. Crim. App. 2006) (holding that exclusion of evidence showing the defendant's remorse violated due process by preventing defendant from rebutting the State's case when the State left jury with false impression and emphasized it).

[9] *See Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 1731 (2006) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful

12

The United States Supreme Court said in *Pointer v. Texas*,

There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law.[10]

Appellant was entitled to present his defense. As a fundamental right, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. The complainant had already been adjudicated delinquent for sexually assaulting his younger sister. He was not particularly remorseful for that conduct, and his actions resulted in strained relations with his parents and the need for counseling. He was mad at Appellant, and, having been adjudicated delinquent for sexually assaulting his younger sister, he knew firsthand or should have known how damning and indefensible an accusation of sexual assault could be. Appellant was entitled to correct the misleading characterization of the complainant that the

___

opportunity to present a complete defense." (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986)) (internal quotations and citations omitted)); *see also California v. Trombetta*, 467 U.S. 479, 486 n.6, 104 S. Ct. 2528, 2532 n.6 (1984) ("In related cases arising under the Sixth and Fourteenth Amendments, we have recognized that criminal defendants are entitled to call witnesses on their own behalf and to cross-examine witnesses who have testified on the government's behalf." (citations omitted)); *Holmes v. State*, 323 S.W.3d 163, 173 (Tex. Crim. App. 2009) (op. on reh'g) ("[T]he trial court's ruling disallowing cross-examination of the State's expert witness violated the defendant's fundamental rights to a fair trial.").

[10]380 U.S. 400, 405, 85 S. Ct. 1065, 1068 (1965).

State had presented to the jury, but the trial court impermissibly limited his right to cross-examine both the complainant and other witnesses against Appellant and to present evidence. We therefore hold that the trial court abused its discretion by not allowing Appellant to cross-examine the complainant and other adverse witnesses with evidence of the complainant's prior sexual victimization of his little sister.

Rule 44.2(a) of the Rules of Appellate Procedure provides that "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment."[11] Appellant was not allowed to present his defense to the jury in any sense other than argument and innuendo. He was not allowed to offer substantive evidence to rebut the picture of the complainant painted by the State and to explain the bases of Appellant's assertion that the complainant was not the shy innocent who was devastated by sexual abuse requiring counseling to repair the emotional damage. No scientific evidence, no witness, no physical evidence, and no admission otherwise supported the complainant's allegations. It was simply a swearing match. We therefore cannot say beyond a reasonable doubt that the error did not contribute to Appellant's convictions or punishment on the two remaining counts.

---

[11]Tex. R. App. P. 44.2(a).

14

In summary, the State's questioning of the complainant and his father painted an incomplete and misleading picture of the complainant and the circumstances of his outcry. By developing the testimony as it did, the State opened the door to evidence that could have accurately conveyed why the complainant was in counseling, what motivation he may have had to make up a false accusation, and the degree to which he understood sexual matters and to which he personally appreciated legal consequences imposed upon sex offenders.

It should be clear, however, that this opinion is not a green light for Appellant in any subsequent retrial, or for other litigants in other similar cases, to explore in detail the sexual exploits of the complainant or those in positions similar to that in which the complainant finds himself in this case. It is the fact that, and the manner in which, the State created a false impression that opened the door to evidence that the complainant had sexual issues before he met Appellant. We stress that our holding is confined to the record presented in this appeal. The details of the complainant's abuse of his sister, in terms of its nature, frequency, and duration, may not be necessary to rebut the false impression that the complainant did not have issues of a sexual nature before his alleged sexual encounter with Appellant. With these reservations clearly understood, we sustain Appellant's first issue, and because of our disposition of this issue, we do not reach his second issue.[12]

---

[12]*See* Tex. R. App. P. 47.1.

**Conclusion**

Having sustained Appellant's third issue, we reverse the trial court's judgment as to the indecency with a child by contact conviction and sentence, set aside that conviction and sentence, and enter a judgment of acquittal as to Count Three of the indictment. Having sustained Appellant's first issue, we reverse the trial court's judgment as to the two aggravated sexual assaults alleged in Counts One and Two of the indictment and remand this case to the trial court for a new trial on those counts only.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 14, 2013