02-11-253-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00253-CR

 

 









 
 
 Joe
 Dale Johnson
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 89th District Court
  
 of
 Wichita County (48,790-C)
  
 February
 14, 2013
  
 Opinion
 by Justice Dauphinot
  
 (nfp)
 
 


 

JUDGMENT

 

This
court has considered the record on appeal in this case and holds that there was
error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is reversed as to the indecency with a child by contact conviction
and sentence, that that conviction and sentence are set aside, and that
Appellant is acquitted of Count Three of the indictment.  It is further ordered
that the trial court’s judgment is reversed as to the two aggravated sexual
assaults alleged in Counts One and Two of the indictment, and this case is
remanded to the trial court for a new trial on those two counts only.

 

SECOND DISTRICT COURT OF APPEALS

 

 

 

By_________________________________

    Justice Lee Ann Dauphinot

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00253-CR

 

 


 
 
 Joe Dale Johnson
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 89th
District Court OF Wichita COUNTY

----------

MEMORANDUM
OPINION[1]

----------

A
jury convicted Appellant Joe Dale Johnson of two counts of aggravated sexual
assault of a child and one count of indecency with a child, enhanced, and
assessed his punishment at life imprisonment.  The trial court sentenced him
accordingly.  In three issues, Appellant argues (1) that the evidence is
insufficient to support his conviction for indecency with a child by contact because
such alleged contact is subsumed in the first count of aggravated sexual
assault of a child and convictions for both violate double jeopardy protections;
(2) that the trial court abused its discretion by excluding evidence that the
complainant had sexually assaulted his younger sister; and (3) that the trial
court abused its discretion by admitting evidence of Appellant’s
thirty-year-old prior conviction at the guilt phase of trial.  Because the
evidence is insufficient to support both Count One and Count Three, we reverse
the trial court’s judgment as to Count Three, set aside Appellant’s conviction
and sentence for indecency with a child by contact, and enter a judgment of
acquittal on Count Three.  Because the trial court reversibly erred by refusing
to allow Appellant to correct a confusing or misleading impression on the jury
by putting on evidence of the complainant’s prior, sexual misconduct, we reverse
the trial court’s judgment as to Counts One and Two and remand this cause to
the trial court for a new trial on those counts.

Background
Facts

Complainant
H.H. was a twelve-year-old boy who was participating in court-ordered
counseling for sexually molesting his ten-year-old sister over several years.  He
had also been caught shoplifting and had strained relationships with his
parents.  Appellant, a man in his fifties and a board member of the church that
he and the complainant attended, had previously been convicted of a sexual
offense against a teenage boy thirty years before in Kansas.  Appellant and the complainant spent time together, and the complainant
accepted work mowing Appellant’s and other church members’ lawns for pay.  The complainant testified that Appellant had lured him into Appellant’s
study and that Appellant had seduced him into allowing Appellant to perform
fellatio on him and sought to have the complainant perform fellatio on
Appellant.  The complainant eventually told the youth minister, who was never
interviewed by law enforcement and did not testify at trial, what had happened.
 The youth minister went to the complainant’s parents to tell them what their
son had told him.  The parents, in turn, reported what they had been told to
the Burkburnett Police Department.  The purported offenses were alleged to have
occurred in April 2007.

At
trial, Appellant sought to elicit testimony that the complainant had been
adjudicated delinquent for sexually molesting his ten-year-old sister and,
among other things, was in court-ordered counseling as a result.  On appeal,
Appellant argues that the excluded evidence (1) was admissible to rebut the
false impression the State had left with the jury regarding the primary reason
the complainant was in counseling, thereby opening the door for the sexual
abuse evidence; (2) impeached the complainant’s testimony that his guilt in
being the victim of sexual abuse was relieved when he made his outcry; and (3) supported
the defense’s theory that the complainant had fabricated the abuse allegations against
Appellant to get attention and sympathy for himself.  In the trial court,
Appellant offered the evidence on the basis that under the Sixth Amendment,
cross-examination is the fundamental right of a defendant, affecting due
process.  He argued that the evidence showed the complainant’s mental state at
the time he made the outcry and what he was in counseling for.  He also argued
that the complainant’s past sexual behavior could be motive or bias for making
the outcry, not only for deception, but to get attention, and that the evidence
was admissible to show the complainant’s knowledge of sexual matters.

Double Jeopardy

In
his third issue, Appellant argues that because the crime of indecency with a
child by contact, as alleged in Count Three of the indictment, was subsumed in
the crime of aggravated sexual assault of a child as alleged in Count One of
the indictment, the evidence is insufficient to show that Appellant committed a
separate indecency offense as alleged in the indictment.  He further argues
that having two convictions rely on the same act of touching violates double
jeopardy protections.  The record clearly shows that the sexual contact proved
at trial occurred during and as part of the aggravated sexual assault alleged
in Count One.  As the State candidly concedes, to allow both convictions to
stand would violate the double jeopardy clause of the Constitution of the United
States.[2]
 Because the contact alleged in Count Three was subsumed in the aggravated
sexual assault of a child alleged in Count One, we sustain Appellant’s third
issue.  We reverse the trial court’s judgment as to Count Three, set aside Appellant’s
conviction and punishment for indecency with a child by contact as alleged in
Count Three,[3] and
enter a judgment of acquittal on Count Three.[4]

Evidentiary
Issues

The
Complainant’s Prior Bad Acts

In
his first issue, Appellant contends that the trial court erred by excluding
evidence in violation of the Sixth Amendment, the Due Process Clause, and rules
of evidence 404(B) and 412 that the complainant had sexually assaulted his
younger sister.  Appellant argues that “[t]he evidence that the alleged victim
had sexually molested his little sister was admissible because the State left a
false impression with the jury during its direct exam of the alleged victim and
because it was admissible to show his mental status at the time of his alleged
outcry.”

The
State concedes that Appellant preserved his constitutional complaint but argues
that he failed to preserve that portion of his complaint concerning the State’s
creating a false impression.  After reviewing the record, we disagree.  In
offering the evidence, defense counsel argued,

And
the Merch case and others have said that the—the person’s mental state
at the time that, you know, he—he makes this outcry, I think is relevant and
what’s going on in his head.  And he said that it affected his mental state. 
That’s what he was in counseling for and so I think it goes in for that.

Indeed,
Appellant’s entire defense was an attempt to show that the State was creating
the false impression that the complainant was a victim, a child who was
emotionally distraught over being victimized and sufficiently innocent to be
embarrassed to discuss it.  The State wanted to create the impression with the
jury that the complainant was truthful; Appellant wanted to show the jury that
the complainant was a liar.  Appellant’s position throughout the trial, which
he has maintained on appeal, was that the State created the false impression
that the complainant was innocent in sexual matters.  That was an impression that
Appellant sought to dispel at trial and now seeks to dispel on appeal.  We
therefore hold that Appellant sufficiently preserved this entire issue for
appellate review.

Outside
the presence of the jury, the complainant testified that he had sexually abused
his younger sister both before and after Appellant’s sexual assaults on him.  The
complainant also testified that his parents put him in counseling because he was
sexually abusing his sister.  There was evidence that the counseling was
court-ordered as a result of the complainant’s sexual abuse of his younger
sister over several years.  Sexual abuse of his sister was one of the things that
the complainant was struggling with in November 2007 and contributed to his
emotional difficulties.  Before the jury, however, the complainant’s father
testified that the complainant was being bullied at school, suffering from
depression, had a stressful relationship with his parents, and had been caught
shoplifting.  Watching pornography was also an issue.  The complainant’s father
testified that those were the reasons that he and his wife had placed the complainant
in counseling, although, when asked if the complainant was in counseling before
April 2007, his father testified that he could not remember when counseling
began.  The following exchange occurred before the jury:

Q.      Okay. 
And so he—you would agree with me that during the fall of 2007, including
November of ‘07—November of 2007, he was dealing with a lot of issues, correct?

A.      There were
issues, yes.

Q.      And he was
having emotional difficulties, correct?

A.      Yes.

Outside
the presence of the jury, the complainant testified to the sexual abuse of his
sister.  In the jury’s presence, he testified that Appellant had sexually
abused him.  He also testified about his use of pornography and stealing.  He
said that he had watched pornography for a long time.  According to his father,
the complainant had viewed pornography at least since he was ten years old.  But
the complainant also testified that he had gone four months without watching
pornography until Appellant influenced him to start watching pornography
again.  The complainant also testified that he was angry at Appellant because
Appellant had let him play with a Nintendo DS that had been donated to the
church but then took the DS away from him.  Then the complainant testified,

Q.      At
some point you made the decision to tell someone about the sexual acts [by
Appellant against the complainant]?

A.      Yes.

Q.      Why
did you decide to do that?

A.      Because
after the DS wasn’t allowed to come to the teen group, I was at first pretty
angry that I didn’t get the DS like I wanted, but then I got to thinking about
it and then I thanked Jimmy for not letting us have it.  That was the teen
leader that didn’t allow it to come through.  And I told him that I was
thankful for it[,] and he said that—why are you glad that that didn’t happen? 
I said, well, let’s just say I can’t tell you.  And he said, well, that sounds
a lot like something that happened to me.

Q.      And
then—and then did you tell him what happened to you?

A.      Yes.

Q.      Did
you tell him everything?

A.      Yes.

Q.      How
did you feel when you told him?

A.      I
felt better, like a weight off my shoulders . . . .

The
State argues that the rules of evidence and the family code prevented
impeachment by a juvenile adjudication and that the evidence was not relevant
to Appellant’s theory of fabrication.  We disagree.  The
Texas Court of Criminal Appeals has set out a hierarchy for situations in which
there is a conflict between the caselaw and its rules.  Rule of Evidence 101(c)
states that in criminal cases,

[h]ierarchical
governance shall be in the following order: the Constitution of the United
States, those federal statutes that control states under the supremacy clause,
the Constitution of Texas, the Code of Criminal Procedure and the Penal Code,
civil statutes, these rules, and the common law.  Where possible, inconsistency
is to be removed by reasonable construction.[5]

The Texas
Court of Criminal Appeals addressed the appropriate balancing of interests
between rule 403 and a defendant’s right to confront and cross-examine his
accuser and to present his defense in a sexual assault case in Hammer v.
State:

Trials involving
sexual assault may raise particular evidentiary and constitutional concerns
because the credibility of both the complainant and defendant is a central,
often dispositive, issue.  Sexual assault cases are frequently “he said, she
said” trials in which the jury must reach a unanimous verdict based solely upon
two diametrically different versions of an event, unaided by any physical,
scientific, or other corroborative evidence.  Thus, the Rules of Evidence,
especially Rule 403, should be used sparingly to exclude relevant, otherwise
admissible evidence that might bear upon the credibility of either the
defendant or complainant in such “he said, she said” cases.  And Texas law, as
well as the federal constitution, requires great latitude when the evidence
deals with a witness’s specific bias, motive, or interest to testify in a
particular fashion.[6]

The Hammer
court concluded that “the constitution is offended if the state evidentiary
rule would prohibit him from cross-examining a witness concerning possible
motives, bias, and prejudice to such an extent that he could not present a
vital defensive theory.”[7]

In
presenting its case and in jury argument in the trial court, the State
repeatedly referred to the reluctance of a boy the complainant’s age to admit
to the sexual acts that he claimed Appellant committed against him, essentially
natural shyness to speak of sexual matters.  Further, the State repeatedly
spoke of the grooming that would cause an innocent young man to become the
victim of a sexual predator.  Finally, the prosecutor began the State’s rebuttal
final argument by reminding the jury that he had told them during opening
statement that “this case is about a deviant man who took sexual advantage of a
young boy . . . [,] how [Appellant] took sexual advantage
of [the complainant] for [Appellant’s] own pleasure and . . . manipulated [the complainant,]
. . . and these are the aftereffects that you’ve heard about this week.”  Final
argument continued in this vein until the very end.

The
State left the impression with the jury that the complainant’s emotional
problems, watching pornography, conflict with his parents, and need for
counseling all arose as a result of his victimization by school bullies and by Appellant,
who caused him to participate in sexual activities.  This was a false impression
that Appellant was entitled to rebut[8] as
part of his fundamental due process right to confront and cross-examine
witnesses against him in challenging the State’s case.[9]

The United States Supreme Court said in Pointer v.
Texas,

There are few subjects, perhaps, upon
which this Court and other courts have been more nearly unanimous than in their
expressions of belief that the right of confrontation and cross-examination is
an essential and fundamental requirement for the kind of fair trial which is
this country’s constitutional goal.  Indeed, we have expressly declared that to
deprive an accused of the right to cross-examine the witnesses against him is a
denial of the Fourteenth Amendment’s guarantee of due process of law.[10]

Appellant
was entitled to present his defense.  As a fundamental right, the Constitution
guarantees criminal defendants a meaningful opportunity to present a complete
defense.  The complainant had already been adjudicated delinquent for sexually
assaulting his younger sister.  He was not particularly remorseful for that
conduct, and his actions resulted in strained relations with his parents and
the need for counseling.  He was mad at Appellant, and, having been adjudicated
delinquent for sexually assaulting his younger sister, he knew firsthand or
should have known how damning and indefensible an accusation of sexual assault
could be.  Appellant was entitled to correct the misleading characterization of
the complainant that the State had presented to the jury,
but the trial court impermissibly limited his right to cross-examine both the complainant
and other witnesses against Appellant and to present evidence.  We
therefore hold that the trial court abused its discretion by not allowing
Appellant to cross-examine the complainant and other adverse witnesses with
evidence of the complainant’s prior sexual victimization of his little sister.

Rule
44.2(a) of the Rules of Appellate Procedure provides that “[i]f the appellate
record in a criminal case reveals constitutional error that is subject to
harmless error review, the court of appeals must reverse a judgment of
conviction or punishment unless the court determines beyond a reasonable doubt
that the error did not contribute to the conviction or punishment.”[11]  Appellant was
not allowed to present his defense to the jury in any sense other than argument
and innuendo.  He was not allowed to offer substantive evidence to rebut the
picture of the complainant painted by the State and to explain the bases of
Appellant’s assertion that the complainant was not the shy innocent who was
devastated by sexual abuse requiring counseling to repair the emotional
damage.  No scientific evidence, no witness, no physical evidence, and no
admission otherwise supported the complainant’s allegations.  It was simply a
swearing match.  We therefore cannot say beyond a reasonable doubt that the
error did not contribute to Appellant’s convictions or punishment on the two
remaining counts.

In
summary, the State’s questioning of the complainant and his father
painted an incomplete and misleading picture of the complainant and the
circumstances of his outcry.  By developing the testimony as it did, the State
opened the door to evidence that could have accurately conveyed why the
complainant was in counseling, what motivation he may have had to make up a
false accusation, and the degree to which he understood sexual matters and to
which he personally appreciated legal consequences imposed upon sex offenders.

It
should be clear, however, that this opinion is not a green light for Appellant
in any subsequent retrial, or for other litigants in other similar cases, to
explore in detail the sexual exploits of the complainant or those in positions
similar to that in which the complainant finds himself in this case.  It is the
fact that, and the manner in which, the State created a false impression that
opened the door to evidence that the complainant had sexual issues before he
met Appellant.  We stress that our holding is confined to the record presented
in this appeal.  The details of the complainant’s abuse of his sister, in terms
of its nature, frequency, and duration, may not be necessary to rebut the false
impression that the complainant did not have issues of a sexual nature before
his alleged sexual encounter with Appellant.  With these reservations clearly
understood, we sustain Appellant’s first issue, and because of our disposition
of this issue, we do not reach his second issue.[12]

Conclusion

Having
sustained Appellant’s third issue, we reverse the trial court’s judgment as to
the indecency with a child by contact conviction and sentence, set aside that
conviction and sentence, and enter a judgment of acquittal as to Count Three of
the indictment.  Having sustained Appellant’s first issue, we reverse the trial
court’s judgment as to the two aggravated sexual assaults alleged in Counts One
and Two of the indictment and remand this case to the trial court for a new
trial on those counts only.

 

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT,
WALKER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 14,
2013









[1]See Tex. R. App. P. 47.4.





[2]See U.S. Const.
amend. V; Brown v. Ohio, 432 U.S. 161, 165, 97
S. Ct. 2221, 2225 (1977);
Ex parte Herron, 790 S.W.2d 623, 624
(Tex. Crim. App. 1990) (op. on reh’g).





[3]See Bigon v. State,
252 S.W.3d 360, 373 (Tex. Crim. App. 2008) (retaining first-degree felony as
“most serious offense” over second-degree felony with identical sentence); Ex
parte Pruitt, 233 S.W.3d 338, 348 (Tex. Crim. App. 2007) (holding genital
contact subsumed within alleged incident of penetration is
lesser included offense of penetration); Patterson v. State, 152 S.W.3d
88, 92 (Tex. Crim. App. 2004) (holding penile contact with genitals in course
of penile penetration subsumed).





[4]See Bigon, 252
S.W.3d at 373.





[5]Tex. R. Evid. 101(c).





[6]296
S.W.3d 555, 561–62 (Tex. Crim. App. 2009) (footnotes omitted).





[7]Id.
at 562–63.





[8]See Renteria v. State,
206 S.W.3d 689, 697–98 (Tex. Crim. App. 2006) (holding that exclusion of
evidence showing the defendant’s remorse violated due process by preventing
defendant from rebutting the State’s case when the State left jury with false
impression and emphasized it).





[9]See Holmes v.
South Carolina, 547 U.S. 319, 324, 126 S. Ct. 1727, 1731 (2006) (“Whether
rooted directly in the Due Process Clause of the Fourteenth Amendment or in the
Compulsory Process or Confrontation Clauses of the Sixth Amendment, the
Constitution guarantees criminal defendants a meaningful opportunity to present
a complete defense.”  (quoting Crane v. Kentucky, 476 U.S. 683, 690, 106
S. Ct. 2142, 2146 (1986)) (internal quotations and citations omitted)); see
also California v. Trombetta, 467 U.S. 479, 486 n.6, 104 S. Ct.
2528, 2532 n.6 (1984) (“In related cases arising under the Sixth and Fourteenth
Amendments, we have recognized that criminal defendants are entitled to call
witnesses on their own behalf and to cross-examine witnesses who have testified
on the government’s behalf.”  (citations omitted)); Holmes v. State, 323
S.W.3d 163, 173 (Tex. Crim. App. 2009) (op. on reh’g) (“[T]he trial court’s
ruling disallowing cross-examination of the State’s expert witness violated the
defendant’s fundamental rights to a fair trial.”).





[10]380 U.S. 400, 405, 85 S.
Ct. 1065, 1068 (1965).





[11]Tex. R. App. P. 44.2(a).





[12]See Tex. R. App.
P. 47.1.