COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| JAMES FRANKLIN ROHR, | § | No. 08-12-00219-CR |
| Appellant, | § | |
| v. | § | Appeal from |
| | § | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | of Dallas County, Texas |
| Appellee. | § | |
| | § | (TC # F-0820987-H) |

## **O P I N I O N**

James Rohr appeals his conviction of aggravated sexual assault of a child under the age of fourteen. Appellant waived his right to a jury and entered an open plea of *nolo contendere*. The State introduced evidence showing that Appellant had sexually assaulted his granddaughter on numerous occasions. The trial court found Appellant guilty and assessed his punishment at imprisonment for eight years. The Texas Supreme Court transferred the appeal from the Fifth Court of Appeals to the Eighth Court of Appeals pursuant to a docket equalization order.[1] We affirm.

### **ARTICLE 1.15 SUFFICIENCY CHALLENGE**

We will begin our review with Appellant's third issue which purports to attack the legal sufficiency of the evidence supporting his conviction on the ground that the complainant was not

---

[1] We will decide the case in accordance with the precedent of the Fifth Court of Appeals. *See* TEX.R.APP.P. 41.3.

credible. He argues that the State was required to prove each element of the offense beyond a reasonable doubt and the evidence must be measured under the *Jackson v. Virginia*[2] standard of review. Appellant's argument fails to take into account the impact of his no contest plea and Article 1.15 of the Code of Criminal Procedure on the standard of review.

*Relevant Law and Standard of Review*

When a defendant waives his right to a jury trial and enters a no contest plea on a non-capital offense, the proceeding is no longer bifurcated with separate guilt-innocence and punishment phases. *Gomez v. State*, 399 S.W.3d 604, 606 (Tex.App.--Dallas 2013, pet. ref'd); *Saldana v. State*, 150 S.W.3d 486, 489 (Tex.App.--Austin 2004, no pet.), *citing Barfield v. State*, 63 S.W.3d 446, 449 (Tex.Crim.App. 2001). This is true even when the trial court, as in this case, employs procedures characteristic of bifurcation. *Gomez*, 399 S.W.3d at 606; *Saldana*, 150 S.W.3d at 489. The evidence is admitted at the unitary proceeding both to substantiate the defendant's plea and to allow the trial court to determine an appropriate sentence.

The entry of a valid guilty plea has the effect of admitting all material facts alleged in the formal criminal charge. *Ex parte Williams*, 703 S.W.2d 674, 682 (Tex.Crim.App. 1986); *McGill v. State*, 200 S.W.3d 325, 330 (Tex.App.--Dallas 2006, no pet.). With one exception not applicable here, a plea of *nolo contendere* or "no contest" has the same legal effect as a guilty plea. TEX.CODE CRIM.PROC.ANN. art. 27.02(5)(West 2006)(providing that a plea of nolo contendere has the same legal effect as a plea of guilty except that it may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based). The United States Constitution does not require that the State

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

present evidence in support of a guilty plea. *Menefee v. State*, 287 S.W.3d 9, 13 (Tex.Crim.App. 2009).

When a defendant enters a plea of "guilty" or "no contest" to a non-capital felony offense, Article 1.15 of the Texas Code of Criminal Procedure requires the State to offer evidence of guilt in support of the plea. TEX.CODE CRIM.PROC.ANN. art. 1.15 (West 2005).[3] Under Article 1.15, a trial court is not permitted to render a conviction without evidence establishing a defendant's guilt even if he has entered a plea of guilty or no contest. TEX.CODE CRIM.PROC.ANN. art. 1.15; *Menefee*, 287 S.W.3d at 13. This statute is an additional procedural safeguard required by the State of Texas but not by federal constitutional law. *Menefee*, 287 S.W.3d at 13, *citing Ex parte Williams*, 703 S.W.2d 674, 678 (Tex.Crim.App. 1986).

The trial court incorrectly advised the parties, after Appellant entered his no contest plea, that the State would be required to present evidence proving Appellant's guilt beyond a reasonable doubt. When a defendant waives his right to a jury trial and enters a plea of guilty or no contest, the State is not required to prove the defendant's guilt beyond a reasonable doubt. *McGill v. State*, 200 S.W.3d 325, 330 (Tex.App.--Dallas 2006, no pet.); *see Ex parte Martin*, 747 S.W.2d 789, 792-93 (Tex.Crim.App. 1988)(op. on reh'g). Article 1.15 only requires substantiation of the plea. *Menefee*, 287 S.W.3d at 14. "By its plain terms it requires evidence in addition to, and independent of, the plea itself to establish the defendant's guilt." *Id.* As

---

[3] Article 1.15 provides in pertinent part that: "No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless the defendant, upon entering a plea, has in open court in person waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14; provided, however, that it shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same."

observed by the State, the *Jackson v. Virginia* standard does not apply when, as here, the defendant knowingly, intelligently, and voluntarily enters a plea of no contest. *See Ex parte Williams*, 703 S.W.2d 674, 682 (Tex.Crim.App. 1986); *O'Brien v. State*, 154 S.W.3d 908, 910 (Tex.App.--Dallas 2005, no pet.). The proper standard of review requires us to examine whether the evidence embraces each essential element of the offense charged. *See Menefee*, 287 S.W.3d at 13; *Stone v. State*, 919 S.W.2d 424, 427 (Tex.Crim.App. 1996); *McGill*, 200 S.W.3d at 331. If the State fails to introduce sufficient evidence under Article 1.15's standard, the trial court is not authorized to convict. *See Menefee*, 287 S.W.3d at 14. A conviction rendered without sufficient evidence to support the no contest or guilty plea constitutes non-constitutional trial error. *Id.*

*The Evidence*

The indictment alleged that Appellant, on or about August 2, 2008, intentionally or knowingly committed aggravated sexual assault of S.R., a child under the age of fourteen, by causing his mouth to contact the sexual organ of S.R., the complainant. TEX.PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (a)(2)(B)(West Supp. 2014). S.R. was twelve years of age when the trial began in 2011. S.R. often visited Appellant, who is her paternal grandfather, and his wife, Linda, on weekends. S.R.'s father, Chris, also lived with Appellant.[4] She described numerous instances where Appellant had sexual contact with her including the type of contact alleged in the indictment. The sexual abuse by Appellant began when S.R. was around the age of eight or nine and took place in his Tahoe, which she called a "van," and in Appellant's bedroom and bathroom. S.R. recalled that when Chris and Linda were at work, Appellant would ask S.R. to follow him into the bedroom and tell her to remove her clothes. She would then get into bed

---

[4] S.R.'s father, Chris, died during the summer of 2011.

with Appellant who was naked. At Appellant's request, S.R. would get on top of him with her head facing his feet. S.R. would play with his penis and he would touch her "bottom." S.R. described how Appellant would lick her female sexual organ and she would lick or suck on his penis. She testified that Appellant told her what to do and how to do it. The evidence introduced by the State is sufficient under Article 1.15 to support the trial court's finding of guilty because it substantiates or "embraces" each essential element of the offense charged.

Even if we assume for the sake of argument that the *Jackson v. Virginia* standard applied in this case, we would not apply it in the manner suggested by Appellant. Under the *Jackson v. Virginia* standard, a reviewing court must consider all evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found beyond a reasonable doubt that the prosecution proved all elements of the crime. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The trier of fact determines the credibility and weight that is to be given to admitted evidence; thus, we are required to defer to the verdict rendered by the trier of fact. *Brooks*, 323 S.W.3d at 894. The evidence, when considered in the light most favorable to the trial court's finding of guilt, is legally sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the State proved each element of the offense. Therefore, the State met its burden under either standard. Issue Three is overruled.

## LIMITATION OF CROSS-EXAMINATION

Issues One and Two are related to Appellant's contention that the trial court improperly limited his cross-examination. In Issue One, Appellant contends the trial court erred by refusing

to allow him to cross-examine the State's witnesses regarding "possibly false" allegations S.R. made against her father because it prevented him from showing the complainant's bias against Appellant and motive to testify falsely against him. Appellant argues that this limitation of his right of cross-examination under the Sixth Amendment resulted in a denial of due process. In Issue Two, Appellant argues that the trial court prevented him from making a bill of exception.

*Relevant Law and Standard of Review*

The Sixth Amendment guarantees a defendant the right to confront the witnesses against him. U.S. CONST. AMEND. VI; *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965). The constitutional right of confrontation necessarily includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex.Crim.App. 2009); *Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996). A trial court violates a defendant's right of confrontation if it improperly limits appropriate cross-examination. *Carroll*, 916 S.W.2d at 497.

Appropriate cross-examination includes all avenues reasonably calculated to expose a motive, bias, or interest for the witness to testify. *Carroll*, 916 S.W.2d at 497; *Virts v. State*, 739 S.W .2d 25, 28-29 (Tex.Crim.App. 1987). The right of an accused to cross-examine a testifying state's witness includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility. *Id*. at 29. The trial court has broad discretion to impose reasonable limits on cross-examination to

avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex.Crim.App. 2000); *Carroll*, 916 S.W.2d at 498. We review a trial court's decision to limit cross-examination under an abuse of discretion standard. *Billodeau v. State*, 277 S.W.3d 34, 43 (Tex.Crim.App. 2009); *Ho v. State*, 171 S.W.3d 295, 304 (Tex.App.--Houston [14th Dist.] 2005, pet. ref'd).

Trials involving sexual assault may raise particular evidentiary and constitutional concerns because the credibility of the complainant and defendant is a central and often dispositive issue. *Hammer*, 296 S.W.3d at 561. The Court of Criminal Appeals has cautioned that the Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant and otherwise admissible evidence bearing upon the credibility of either the defendant or complainant in these cases. *Id.* at 562. Evidence that the complainant made a prior false accusation in a sexual assault case is not admissible to attack the complainant's general credibility because this runs afoul of Rule 608(b)'s general prohibition against impeachment with specific instances of conduct. *Id.* at 564-65. Evidence of a prior false accusation offered for some purpose other than a propensity attack upon the witness's general character for truthfulness may be admissible under the Rules of Evidence. *Id.* at 565, *citing Billodeau*, 277 S.W.3d at 42-43 (where evidence showed that child complainant accused defendant of sexual molestation after defendant took away the child's remote-controlled cars, evidence that the child had on other occasions when angry at someone had threatened to falsely accuse that person of sexually molesting him showed a common motive to accuse someone of molestation when he is angry at them; consequently, defendant was entitled under Texas Rule of Evidence 613(b) to cross-

examine the complainant about the false threats in order to show his motive to testify untruthfully, and if the complainant denied making those threats, the defendant was entitled under Rule 613(b) to offer extrinsic evidence of those threats).

*Factual and Procedural Background*

Appellant argues that his constitutional right of confrontation was violated because he was not permitted to cross-examine the State's witnesses regarding the complainant's "possibly false" statements that her father had sexually abused her. Even though this was a unitary proceeding, the trial court conducted what purported to be a separate guilt-innocence phase on December 2, 2011 and February 20-21, 2012, and a punishment phase on April 20, 2012. Appellant's complaints regarding cross-examination and the exclusion of evidence first arose at the December 2, 2011 hearing. Appellant focuses his argument on the trial court's comments and ruling made at that hearing, but the issues and evidence continued to develop during the subsequent hearings.

The complainant, S.R., testified at the December 2, 2011 hearing. Appellant cross-examined S.R. extensively regarding differences between her trial testimony and her forensic interview. Appellant also elicited testimony that S.R. had accused her father of sexually abusing her. Appellant asked S.R. why she said during her first forensic interview that Appellant was the only person who had sexually abused her. S.R. testified that she "wasn't thinking about it" and she was more focused on her grandfather in that interview. When asked why she made the outcry several months later in April 2009, S.R. stated she was not sure. Appellant also questioned her about a meeting in the District Attorney's Office on April 23, 2009 with Assistant

District Attorney Carmen White and District Attorney Investigator Greg Sherrell. Appellant's attorney specifically asked S.R. whether she was ever asked had she been truthful regarding "whether [Appellant] really did it?" S.R. said that she had been asked that question and she told them that it was true. Appellant also asked S.R. whether she had stated that the allegation against Appellant was "kind of a lie." The State objected that defense counsel's reference to the phrase "kind of a lie" referred to a statement in notes made by an investigator during an interview of S.R. and the statement did not refer to S.R.'s accusation against Appellant but to an accusation against her father. The trial court stated that the content of the conversation and meaning of the note would have to come from the people who were present and he gave the State the option to proceed with the complainant's testimony or continue the proceeding to another date. The State opted to continue with S.R.'s testimony so she did not have to return to court on another day. Appellant continued his cross-examination and he did not object to any restriction on his right to cross-examine her.

At Appellant's request, subpoenas were issued for White and Sherrell before the next hearing and the State filed a motion to quash. When the trial resumed on February 20, 2012, the trial court heard the motions to quash. Appellant indicated that he wanted to elicit testimony from the witnesses about an interview of S.R. related to her accusations against her father. The State objected that the conversation with S.R. was privileged and any evidence about S.R.'s accusation against her father was inadmissible under TEX.R.EVID. 412(b). The trial court made an initial ruling that the witnesses' conversation with S.R. was privileged but the State had agreed to waive the privilege to the extent there was exculpatory impeachment evidence. The

court determined that the conversation relating to S.R.'s father was not relevant, but if S.R. testified to anything that was contrary to what she said in the April 23, 2009 meeting it would be relevant and either party could call her back to the stand. Additionally, the court ruled that if there were any other issues Appellant believed were exculpatory, he had the right to re-call S.R. to the stand.

Appellant then called Sherrell and White to testify about their interview of S.R. on April 23, 2009. This meeting was a second interview with the complainant and its purpose was to discuss whether anyone else had sexually abused her. Sherrell's handwritten notes reflect that they talked about "grandpa" during the first meeting. The notes also stated the following: "Last time - kinda a lie." Sherrell explained that this portion of his notes referred to a discussion about S.R.'s father, Chris. When White and Sherrell asked S.R. during the first interview whether anyone else had had touched her, she told them "no." In the second interview, S.R. told them that this was "kinda a lie." Similarly, White testified the complainant told them that she had not been truthful when she previously denied being sexually abused by anyone other than Appellant. S.R. explained that she was scared during the first interview and she "kinda lied because [she] didn't tell [them] about that the last time." When White asked S.R. why she had not told them about it, she stated: "Well, it's kind of like reading a book. You want to read this book and close it up before you get to another book." White understood the analogy to mean that S.R. wanted to talk about Appellant first and get through it before talking about what her father had done to her.

At the conclusion of the hearing on the motion to quash, the trial court found that the

statement "kind of a lie" did not refer to S.R.'s accusation against Appellant, and therefore, it was not admissible as a prior inconsistent statement. Finding Sherrell's note and the testimony of White and Sherrell about S.R.'s accusation against her father irrelevant to the case against Appellant, the trial court excused the witnesses from their subpoenas. The court gave Appellant another opportunity to present additional evidence and stated: "If there's something you think that Ms. White can say that's going to change my mind, then have at it. Otherwise, let's get back to the trial." Appellant's attorney responded that he did not have anything else. Appellant presented other evidence relevant to his position that the complainant was untruthful. First, Larry Green, who is in the business of auto, boat, and truck upholstery, testified that he had worked on Appellant's Tahoe and he recalled that it had a "police cage" between the rear seats and rear compartment of the Tahoe. Appellant offered this evidence to discredit S.R.'s testimony that when the sexual abuse occurred in Appellant's "van" she sometimes crawled from the front seat to the "back of the truck." Green admitted on cross-examination that a child could probably crawl over the console into the rear seat.

S.R. and her sister stayed with Brandy Dingledine-Meyers during a portion of the summer of 2008 but the children also stayed at Appellant's home that summer. Dingledine-Meyers had been a friend of the children's mother, Heather, since college. The children stayed with Dingledine-Meyers during the week and spent the weekends at Appellant's home. Chris Rohr provided support for the children by giving money to Appellant who in turn gave the money to Dingledine-Meyers. Heather became upset because the child support was being given to Dingledine-Meyers rather than to her and she picked up the children.

Appellant's wife, Linda Rohr, also testified on his behalf. In August 2008, the children were staying with Appellant and Linda for two weeks followed by two weeks with Heather's grandmother. Heather was extremely angry with Chris because he was giving half of the child support to Appellant and Linda and giving the other half to Heather's grandmother. Heather told Linda to talk to Chris about the child support or they would be sorry. About a week after this conversation, Heather told Appellant to take the children to Brandy's house. Chris subsequently paid the child support to Heather. S.R. made the outcry against Appellant in September of 2008. The dispute over child support was apparently not resolved and the Texas Attorney General instituted proceedings against Chris in November of 2008. Chris and Heather entered into an agreed order resolving the child support/visitation dispute between them in March of 2009 and S.R. made the outcry against Chris in April of 2009.

At the conclusion of the hearing on February 21, 2012, the trial court found that the evidence proved Appellant's guilt. The court explained that he found S.R. to be extremely credible because of her demeanor and the type of details she provided about the offense, including her testimony that Appellant's mustache hurt when he was sexually assaulting her. The court continued Appellant on bond until the punishment hearing.

At the beginning of the punishment hearing on April 20, 2012, the court addressed Appellant's complaint that he had not been permitted to make a bill of exception. In an apparent response to the trial judge's explanation of why he found the complainant to be so credible, Appellant made a motion to reopen the evidence and he argued that he had been prevented from exploring alternate theories which would explain why the child had knowledge of the type of

details the trial court had found so persuasive. In a drastic departure from his assertion that S.R. had falsely accused her father of sexual molestation, Appellant argued that he should be permitted to show that S.R.'s knowledge of sex and her knowledge of what can happen during sex was learned when her father sexually assaulted her.

The court denied Appellant's motion to reopen but he permitted Appellant to make his bill of exception. Appellant first called S.R. as a witness. S.R. testified that she did not recall anything specific her father had done to her. Appellant asked S.R. whether she recalled the forensic interviewer asking her why she did not mention the accusations against her father during her initial interview. Consistent with what she told White and Sherrell, S.R. testified she told the interviewer that she did not want to bring anything else up until "this one ended." She added that she did not want to make it any harder for her mother. S.R. specifically denied being coached to make the outcry against her father. Additionally, Appellant offered for purposes of his bill a statement of the questions he would have asked Sherrell and White and what he believed their testimony would have been. Appellant also included in his bill the recorded forensic interviews of S.R. related to her accusations against Appellant and her father. Finally, Appellant presented the testimony of Detective Bret Beene who was present during both forensic interviews. Detective Beene noted that S.R.'s behavior and body language was markedly different in the interview pertaining to her father in that she had a lack of emotion and appeared "robotic." Beene refused to state he did not believe S.R.'s accusation against her father and instead said that the forensic interview caused him to have "questions . . . that needed to be answered."

Near the conclusion of the bill of exception, the trial judge asked Appellant whether he

wanted the court to consider all of the evidence offered in the bill of exception, including the forensic interviews, with the understanding that the court would reconsider its ruling on the motion to reopen, and Appellant agreed. The record does not reflect that the trial court granted the motion to reopen. At the sentencing hearing, the trial court reiterated that he had previously found Appellant guilty and he assessed his punishment at imprisonment for eight years.

*Restriction on Making a Bill of Exception*

In Issue Two, Appellant maintains that the trial court abused its discretion by refusing to allow Appellant to make a bill of exception related to the restriction on cross-examination raised in Issue One. Rule 103(a)(2) of the Texas Rules of Evidence provides that error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected and the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked. TEX.R.EVID. 103(a)(2). Rule 103(b) provides that an "offering party shall, as soon as practicable, but before the court's charge is read to the jury, be allowed to make, in the absence of the jury, its offer of proof." TEX.R.EVID. 103(b). The right to make an offer of proof is absolute; a trial court does not have discretion to deny a request to perfect a bill of exception. *Kipp v. State*, 876 S.W.2d 330, 333 (Tex.Crim.App. 1994).

The record does not support Appellant's claim that the trial court restricted Appellant's ability to make a bill of exception during any of the hearings. Further, as detailed above, the trial court addressed Appellant's complaint that he had not been permitted to make a bill and permitted Appellant to make an offer of proof and bill of exception at the beginning of the

punishment hearing.  Even assuming for the sake of argument that the trial court restricted Appellant's ability to make a bill, any error was rendered harmless when the court permitted Appellant to make the supplemental bill at the punishment hearing without any restriction.  *See Andrade v. State*, 246 S.W.3d 217, 226 (Tex.App.--Houston [14th Dist.] 2007, pet. ref'd)(trial court erred by preventing defendant from making an offer of proof prior to the charge being read to the jury at guilt-innocence, but the error was harmless because the court allowed defendant to make an offer of proof prior to the charge being read to the jury during the punishment phase). Issue Two is overruled.

### *Restriction of Cross-Examination*

We turn now to Issue One.  Citing *Hammer v. State*, 296 S.W.3d 555 (Tex.Crim.App. 2009), Appellant asserts that the trial court improperly restricted his cross-examination of the State's witnesses and excluded evidence that S.R. had falsely accused her father, Chris Rohr, of sexual assault.  Appellant argues that the evidence was admissible to show S.R.'s bias and motive to testify falsely against Appellant.

Evidence that the complainant made a prior false accusation in a sexual assault case is not admissible to attack the complainant's general credibility because this runs afoul of Rule 608(b)'s general prohibition against impeachment with specific instances of conduct.  *Hammer*, 296 S.W.3d at 564-65.  Evidence of a prior false accusation offered for some purpose other than a propensity attack upon the witness's general character for truthfulness may be admissible under other Rules of Evidence.  *Id.*, at 565.

In *Hammer*, the defendant presented evidence that the complainant fabricated the sexual

molestation accusation so that she did not have to live with her father. *Id.* at 566. The jury also heard evidence that the complainant was generally angry with her father because he would not let her do whatever she wanted and the defendant was allowed to cross-examine her generally about her motive to falsely accuse her father. *Id.* at 566-67. The trial court excluded evidence that the complainant was particularly angry with her father because he took her to the hospital for a sexual assault examination after she had stayed out overnight. *Id.* at 567. The jury also did not hear evidence that the complainant told different stories about who she had sex with that night. *Id.* The complainant became so upset with her father that she threatened to commit suicide and was admitted to the state hospital. *Id.* The charged offenses occurred approximately a month after she was released from the state hospital. *Id.* The Court of Criminal Appeals concluded that the excluded evidence strongly supported the defensive theory that the complainant had a motive to falsely accuse the defendant of sexual molestation. *Id.* Consequently, the Court found that the evidence was admissible under Rules 412(b)(2)(C) and 613(b)--unless excluded under Rule 403--to prove the complainant's bias against the defendant and to show her purported motive in falsely accusing him. *Id.*

Contrary to Appellant's assertions, the trial court permitted Appellant to present his defense through cross-examination and introduction of defensive evidence showing that S.R.'s mother, Heather, had coached her to falsely accuse Chris because Heather was angry with him over a child support dispute. There is evidence that S.R. and her sister stayed with Dingledine-Meyers or Appellant and Linda during the summer of 2008 due to Heather's work schedule. Heather became angry with Chris because he was giving one-half of the child support to

- 16 -

Dingledine-Meyers and the other half to Appellant and Linda rather than to her. Heather confronted Linda in August of 2008 and told Linda that she should talk to Chris about the child support or they would be sorry. S.R. made the outcry against Appellant in September of 2008. Appellant cross-examined S.R. and elicited testimony that she had accused her father of sexually abusing her. Appellant also asked S.R. about her failure to disclose during the first forensic interview that her father had also sexually abused her. S.R. testified that she "wasn't thinking about it" and she was more focused on her grandfather in that interview. When asked why she made the outcry several months later in April 2009, S.R. was not sure. Based on comments the trial judge made during the hearings, he was fully aware of Appellant's defensive theory that Heather had coached S.R. to falsely accuse Chris of sexual assault due to a dispute over the child support.

Appellant claims that the trial court did not permit him to cross-examine S.R. about the "kinda a lie" statement she made to White and Sherrell. S.R. made an outcry against Appellant in September of 2008 and she told the forensic interviewer as well as White and Sherrell that no one else had sexually abused her. S.R. subsequently made an outcry against her father in April 2009. White and Sherrell met with S.R. on April 23, 2009 to talk to her about her prior statement that no one other than Appellant had abused her and S.R. replied that it was "kinda a lie." During cross-examination, Appellant asked S.R. several questions about the interview and the "kinda a lie" statement, but he focused his questions on whether S.R. meant that she had lied about the accusation against Appellant. He did not ask her during cross-examination or when making his bill of exception whether she had made any statements during the April 23, 2009 or

- 17 -

at any other time that her accusation against her father was a lie. Further, Appellant did not otherwise indicate to the trial court he wished to cross-examine the complainant regarding this subject. Consequently, he failed to preserve his claim that the trial court prevented him from cross-examining the complainant on this issue. *See* TEX.R.APP.P. 33.1; TEX.R.EVID. 103(a); *Holmes v. State*, 323 S.W.3d 163, 168 (Tex.Crim.App. 2009)(in order to preserve error in the restriction of cross-examination "the defendant need not show what his cross-examination of the witness would have affirmatively established; he must merely establish what general subject matter he desired to examine the witness about during his cross-examination and, if challenged, show on the record why such should be admitted into evidence.").

Appellant also argues on appeal that S.R.'s "kinda a lie" statement could have meant that S.R.'s accusation against Appellant was a lie. The trial court did not prevent Appellant from cross-examining S.R. on this issue. In fact, Appellant asked S.R. on cross-examination if anyone had asked her whether she had been truthful regarding whether Appellant really did it. S.R. replied that she had been asked whether she had been truthful regarding what she said Appellant had done and she told them it was true. The record does not support Appellant's claim that the trial court prevented him from cross-examining S.R. or any other witness about whether the "kinda a lie" statement referred to S.R.'s accusation against Appellant.

Appellant next contends that the trial court prevented him from cross-examining White and Sherrell about the "possible false" accusations S.R. made against her father, but it was Appellant who issued subpoenas for White and Sherrell to testify at trial. Consequently, they were Appellant's witnesses and the trial court could not have restricted Appellant's right to

"cross-examine" them. To the extent Appellant can be understood as arguing that the trial court erred by excluding the testimony of White and Sherrell, we conclude that the issue it is not preserved because Appellant did not argue this as a ground for admissibility in the trial court. *See* Tex.R.App.P. 33.1; *Reyna v. State*, 168 S.W.3d 173, 177 (Tex.Crim.App. 2005)(It is not enough to tell the judge that the evidence is admissible; the proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible.). Appellant instead asserted that S.R.'s statements made to White and Sherrell during the second interview were admissible as statements against interest and for impeachment purposes because they showed a pattern of her making inconsistent statements. Further, he did not elicit any testimony from White and Sherrell in the hearing on the motion to quash showing that S.R. had made statements to them indicating her accusations against her father were false. This aspect of Appellant's argument is not preserved and presents nothing for our review. Issue One is overruled. Having overruled each issue, we affirm the judgment of the trial court.

September 10, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

(Do Not Publish)

- 19 -