

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00075-CR

---

**BRIAN EDUARDO VALERIO GALLEGOS, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the 251st District Court
Potter County, Texas
Trial Court No. 80,620-C-CR, Honorable Ana Estevez, Presiding

---

February 21, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Brian Eduardo Valerio Gallegos, Appellant, was charged with two counts of indecency with a child.[1]  A jury convicted him on both counts and sentenced him to five years' imprisonment on Count I and three years on Count II.  On appeal, he complains of two evidentiary rulings made by the trial court: one that excluded potentially exculpatory

---

[1] TEX. PENAL CODE ANN. § 21.11(a)(2)(A).

evidence and one that allowed evidence of similar sexual misconduct by Appellant to be considered by the jury. For the reasons stated below, we affirm.

## BACKGROUND

At the time of the alleged offense, Appellant resided with J.C.'s family.[2] He was in a relationship with J.C.'s older sister, Maria, and the couple lived in an unattached building next to the main residence where the rest of the family, including J.C. and her two other sisters, resided. While living with the family, Appellant contributed $200 a month, presumably as rent. This financial arrangement was either brought on or exacerbated by J.C.'s father's own brush with the law, which led to his incarceration. Appellant moved out of the home after his relationship with Maria abruptly ended. After leaving, he broke off ties with Maria, but continued to contact her younger sisters.

Sometime after he moved out, J.C. overheard her two older sisters, aged 12 and 13, discussing how Appellant had recently sent them images of his penis via social media. J.C. told her sisters that, while Appellant lived with them, he had also exposed his penis to her. In two such incidents, he purportedly masturbated in front of J.C. Eventually, J.C. shared this information with Maria, who relayed it to law enforcement.

At Appellant's subsequent trial, his defensive theory centered around the financial situation of J.C.'s family motivating J.C.'s allegations. During opening arguments, his counsel summarized this argument fairly succinctly: "I think at the end of this trial you-all are going to hear the story about [the] little sister of a recently scorned girlfriend who made

---

[2] We identify the victim by using initials. *See* TEX. CONST. art. I, § 30(a)(1) (granting crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

up a story to get back at that girlfriend's ex." Appellant argues on appeal that his $200 contributions were necessary for the economic survival of the family. And, when he left Maria and cut off these payments, J.C. fabricated the charges in order to exact revenge on behalf of the family. The trial court allowed testimony regarding the existence of the $200 payments to the family but not that J.C.'s father was incarcerated.

Over Appellant's relevancy, Rule 404(b), and Rule 403 objections, the trial court allowed testimony regarding Appellant's extraneous conduct with J.C.'s sisters for the purpose of proving "intent" while noting that the evidence was "extremely prejudicial" and "extremely probative" and to "show it was not an accident or a mistake." The court gave the jury a limiting instruction regarding the extraneous matters.

## RELEVANT LAW

We review a trial judge's decision on the admissibility of evidence under an abuse of discretion standard. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial judge abuses her discretion when her decision falls outside the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 104 (Tex. Crim. App. 1996). If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

Relevant evidence is anything that has a "tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." TEX. R. EVID. 401. "[E]vidence merely tending to affect the probability of the truth or falsity of a fact in issue is logically relevant." *Montgomery v.*

3

*State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990).  Evidence is relevant even if it only provides a "small nudge" in proving or disproving a fact of consequence to the trial.  *Id.*

Character conformity evidence is generally inadmissible, but Rule 404(b) permits the introduction of other crimes or acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  TEX. R. EVID. 404(b). Importantly, this list is "illustrative, not exhaustive."  *Daggett v. State*, 187 S.W.3d 444, 451 n.13 (Tex. Crim. App. 2005).  What would otherwise be inadmissible under Rule 404 as conformity evidence can find alternate avenues of admissibility, especially when necessary to rebut a defensive theory.  *See Crank v. State*, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988) (*"*Probably the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory."), *overruled on other grounds by*, *Alford v. State*, 866 S.W.2d 619, 624 (Tex. Crim. App. 1993); *see also Olmedo v. State*, No. 08-18-00114-CR, 2019 Tex. App. LEXIS 10174, at *9 (Tex. App.—El Paso Nov. 25, 2019, pet. ref'd) (not designated for publication).

Assuming the proffered evidence clears the Rule 404(b) hurdle, it must also satisfy Rule 403's prejudice inquiry, which requires exclusion if the "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."  TEX. R. EVID. 403.  We presume that the probative value of relevant evidence exceeds any danger of unfair prejudice.  *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009).  Evidence is properly excluded only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value."  *Id.* (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)).

4

Issue 1: Exclusion of Evidence of Father's Incarceration

The first evidentiary ruling Appellant challenges denied Appellant the opportunity to present evidence that the victim's father was incarcerated, a fact which Appellant alleges is relevant to his defense. The question before us is whether the trial court's decision to exclude the evidence was erroneous. Assuming without deciding that evidence of the father's imprisonment was wrongfully excluded, we find any error harmless.

Error in the admission or exclusion of evidence is generally reviewed for non-constitutional error. *See Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). An appellate court must disregard a non-constitutional error that does not affect the defendant's substantial rights. TEX. R. APP. P. 44.2(b). If, after examining the record as a whole, we have fair assurance the error did not influence the jury, or influenced the jury only slightly, we will not reverse a conviction. *Ricks v. State*, AP-77,040, 2017 Tex. Crim. App. Unpub. LEXIS 819, at *30 (Tex. Crim. App. Oct. 4, 2017) (not designated for publication) (*citing Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011)). We will only reverse a conviction for non-constitutional error if we have "grave doubt" about whether the result of the trial was substantially influenced by the error. *Barshaw*, 342 S.W.3d at 94.

Again, the importance of the father's imprisonment to the defense's theory of the case is debatable. Although the defense put forth the theory in opening arguments that the allegations were fabricated because Appellant left the victim's sister and stopped

making financial contributions, the defense's closing arguments never mention this theory. It appears that the defense abandoned this theory and instead relied on a hodgepodge of lack of investigation, lack of opportunity, and lack of proof in its summation. This is despite the fact that the bulk of evidence supporting the revenge/financial motivation for fabrication theory, particularly the family's reliance on Appellant's rent payments, was allowed into evidence. From our review of the record, it appears the defensive theory was not foreclosed by evidentiary rulings as much as it was simply discarded by the defense. We are not convinced that the evidentiary ruling had an impact on the jury in light of Appellant's apparent abandonment of the theory. We overrule issue one.

Issue 2: Admission of Evidence of Extraneous Conduct

The second ruling challenged by Appellant allowed the State to present evidence of extraneous sexual misconduct between Appellant and the victim's two older sisters, who were also minors, during the guilt/innocence phase of the trial. Our analysis of this issue leads us to conclude that the trial court did not abuse its discretion.

When applying the abuse of discretion standard, we look to see if the underlying decision was made "without reference to any guiding rules and principles." *Montgomery,* 810 S.W.2d at 380. Here, the issue is whether the similar, extraneous conduct of Appellant sending images of his penis to the victim's sisters should have been excluded under Rules 404 or 403. Since Appellant's theory involved allegations of fabrication, we find the evidence relevant to rebut a defensive theory. *See De la Paz v. State*, 279 S.W.3d 336, 346–47 (Tex. Crim. App. 2009) (finding extraneous-offense evidence

6

admissible for the noncharacter-conformity purpose of rebutting appellant's defensive theory); *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (finding extraneous-offense evidence admissible for the noncharacter-conformity purpose of rebutting appellant's defensive theory of fabrication).

In addition to being relevant, the proffered evidence must be not unfairly prejudicial. As this Court has previously stated, our Rule 403 analysis centers around four issues: (1) how compellingly evidence of the extraneous offense serves to make a fact of consequence more or less probable, (2) the extraneous offense's potential to impress the jury in some irrational but indelible way, (3) the trial time that the proponent required to develop evidence of the extraneous misconduct, and (4) the proponent's need for the extraneous transaction evidence. *Pfeifer v. State*, No. 07-14-00277-CR, 2016 Tex. App. LEXIS 7825, at *9–10 (Tex. App.—Amarillo July 21, 2016, pet. ref'd) (mem. op., not designated for publication) (citing *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002)).

Again, Appellant's defense was centered on establishing that the allegations were fabricated. That similar conduct was also occurring with J.C.'s sisters makes a fact of consequence, that the victim was not fabricating her allegation, more or less probable. The evidence also rebuts a defensive theory. Thus, the first *Pfeifer* factor favors admissibility. The second factor likewise favors admissibility. The trial court gave a limiting instruction regarding the extraneous conduct. We are guided by existing precedent finding that a curative instruction in these circumstances serves to dampen any potential inappropriate impact. *See Lynch v. State,* No. PD-1089-20, 2022 Tex. Crim. App. Unpub. LEXIS 382, at *20 (Tex. Crim. App. Aug. 24, 2022) (not designated for

7

publication) (Rule 403 analysis finding "[t]he trial judge's instructions properly limited the jury's reliance on the extraneous offense evidence to issues that the defense raised, specifically his intent and his knowledge. [This] weighs in favor of admission."). The third *Pfeifer* factor, the amount of time spent on the evidence, favors admissibility as conceded by Appellant. Fairly little time was spent on developing the evidence. As for the fourth and final factor, the State's need for the evidence, we find this evidence was significant to the State's case. The State had to prove the conduct occurred and, because of the fabrication defense, had to buttress the victim's version of events, making the evidence of particular importance. *See Wheeler*, 67 S.W.3d at 888 ("in prosecutions for sexual offenses, a successful conviction often depends primarily on whether the jury believes the complainant, turning the trial into a swearing match between the complainant and defendant.") (internal quotation marks omitted). Sexual assault allegations of this type oftentimes involve this sort of extraneous evidence and trial courts have been instructed to exclude evidence "sparingly" under Rule 403:

> Because Rule 403 permits the exclusion of admittedly probative evidence, it is a remedy that should be used sparingly, especially in "he said, she said" sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant.

*Hammer*, 296 S.W.3d at 568.

Guided by controlling precedent, we find the decision to allow the extraneous matters into evidence was within the reasonable zone of disagreement. We overrule issue two.

8

**CONCLUSION**

Having overruled both of Appellant's issues, we affirm the judgment of the trial court.

Judy C. Parker
Justice

Do not publish.